IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| David B. Stevens )<br>)<br>and )<br>)<br>Mae Whitley )<br>)<br>      Plaintiffs )<br>)<br>  v. )<br>)<br>National Railroad Passenger Corporation )<br>("Amtrak") )<br>      Defendant. )<br>) | Civil Action No. 1:05CV01924-RCL |

## DECLARATION OF MAE WHITLEY

I, Mae Whitley, do declare and state the following:

1.      I began my employment with National Railroad Passenger Corporation ("Amtrak") as a coach cleaner in 1977.  In 1985, I applied for and was promoted to a Foreman I position.  The Foreman I position is a supervisory position located in Amtrak's Mechanical Department.  I have held a Foreman I title from the date of my promotion in 1985 until the present.

2.      On March 7, 2003, I filed a complaint against Amtrak alleging sexual harassment, sex discrimination, and retaliation.  In the complaint, I alleged that my supervisor, Frank Cover ("Cover"), sexually harassed me and withheld training for a Foreman II position and promotions because I would not submit to his sexual advances. I also alleged that Michael Kapela harassed me.  I also alleged that Amtrak retaliated against me by denying me the Foreman II training.  A copy of the Complaint, *Whitley v. National Railroad Passenger Corp.*, Case No. 1:03-CV-0636, is attached as Exhibit 1.

3. Bob Frank was a management official whom I informed about the harassment and discrimination I was facing.

4. Once I filed the charge, Bob Frank refused to speak to me.

5. As part of my prior lawsuit, my lawyer took depositions of management officials Bernard Campbell, Michael Kapela, and others, in or around November 2003.

6. Since my complaint in 2003, I have applied for several Foreman II positions with Amtrak.

7. The Foreman II position supervises Amtrak's skilled craft employees. An applicant may qualify for a Foreman II position through either mechanical experience or by completing one of the Foreman II training classes offered at Amtrak.

8. Although Amtrak discontinued the automatic Foreman II training course, it still offered courses to qualify an employee to work as a Foreman II.

9. During 2004, I took the classes required to qualify for a Foreman II position on my own time. I continued to work full-time in Foreman I position during the time I took the classes.

10. In June of 2004, I completed the Foreman II training classes and have the card certifying completion of the classes. A copy of the certification card is attached as Exhibit 4.

11. According to Amtrak's policies, completion of the Foreman II training program would qualify me to work as a Foreman II.

12. Amtrak's supervisors, including Bernard Campbell and Michael Kapela knew that I had been taking and completed the Foreman II training classes.

13. I was interviewed numerous times for Foreman II vacancies.

14. During my interviews, I was not told that there was a question as to my qualifications.

15. Before Bob Frank interviewed me in 2004, I had been informed not to expect technical questions about the mechanical craft in my interview.

16. However, when Bob Frank interviewed me in 2004, I was asked numerous technical questions, over the objection of my union representative, who was present.

17. I answered those questions anyway.

18. Frank continued to ask for the same information I had already provided in various different ways.

19. I thought he was trying to get me to answer the same question in a different way, which would have been inconsistent.

20. I believe that those questions were asked for purposes of undermining my application.

21. Frank, Campbell and Kapela are the responsible management officials with authority to make the Foreman II position selections.

22. I believe they refused to recommend or select me because of my prior protected activity including my civil lawsuit against Amtrak.

23. On March 30, 2004, I received a Notice to Impose Discipline from Amtrak for allegedly failing to tag a shampoo wand for repair.

24. Bernard Campbell participated in that false discipline against me.

25. In approximately August 2004, I asked Bernard Campbell why I didn't get the Foreman II job.

26. I pointed out to Campbell that I believed that the March 30 charges of misconduct involving the shampoo machine were bogus and that I had otherwise never been in trouble or counseled.

27. He answered me by referring to my lawsuit, reminding me that I had gone after "those white motherfuckers," and asking me: "do you think those motherfuckers are gonna forget?"

28. For emphasis, he added: "do you think that?"

29. I answered him that I was not surprised that upper management would retaliate against me because I went after them.

30. Campbell's response was to the effect that they were not retaliating, but rather were "just not moving" me.

31. Campbell then said that, to retaliate, they would have to do something like fire me.

32. Campbell said: "It's a thing they say to you in court: no harm, no foul."

33. Exasperated, I asked him if I would have to wait a whole year to get promoted.

34. He responded: "Oh you might have to wait a whole year and a half."

35. He also asked me: "Why did you think you could do that?

36. On September 1, 2004, Amtrak withdrew the disciplinary action due to evidence that I was innocent of the alleged misconduct. A copy of this letter is attached as Exhibit 5.

37. General Foreman, Gary Lewis, told me that Leslie White, one of the selectees for a Foreman II position, was disciplined and still promoted to a Foreman II position within a year of the discipline.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 29, 2005.

_____        11/29/05
Mae L. Whitley                         Date