# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____
                                        )
**David B. Stevens**                     )
                                        )
**and**                                  )
                                        )
**Mae Whitley,**                         )
                                        )
      **Plaintiffs,**             )
                                        )
    **v.**                           ) **Civil Action No. 1:05CV01924-RCL**
                                        )
**National Railroad Passenger Corporation** )
**("Amtrak"),**                          )
                                        )
     **Defendant.**              )
_____)

## PLAINTIFF MAE WHITLEY'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Mae Whitley ("Whitley") hereby opposes Defendant National Railroad Passenger Corporation's ("Amtrak") Motion to Dismiss or, in the Alternative, for Summary Judgment.

## I.    BACKGROUND

This is a case of retaliatory and discriminatory failure to promote. Whitley filed a lawsuit against Amtrak in 2003, alleging sexual harassment and retaliation. Since then, she has been repeatedly denied a promotion into a Foreman II position. Although Amtrak denies retaliatory or discriminatory intent, and claims that Whitley was not qualified for the position, Whitley can show that she is, in fact, qualified, and thus that Amtrak's denials are pretextual, such that a trial on the merits is required.

## II.    STATEMENT OF FACTS

Whitley began her employment with National Railroad Passenger Corporation ("Amtrak") as a coach cleaner in 1977.  See Declaration of Mae Whitley ("Whitley Decl. at ¶ 1.   In 1985, Whitley applied for and was promoted to a Foreman I position.  The Foreman I position is a supervisory position located in Amtrak's Mechanical Department.  Whitley has held a Foreman I title from the date of her promotion in 1985 until the present. Whitley Decl. at ¶ 1.

On March 7, 2003, Whitley filed a civil complaint against Amtrak alleging sexual harassment, sex discrimination, and retaliation. Whitley Decl. Exh. 1, Complaint. Whitley v. National Railroad Passenger Corp., Case No. 1:03-CV-0636.   In the complaint, Whitley alleged that her supervisor, Frank Cover ("Cover"), sexually harassed her and withheld training for a Foreman II position and promotions because she would not submit to his sexual advances.  Whitley Decl. Exh.1 - Complaint at ¶¶ 8, 20. Whitley also alleged that Amtrak retaliated against her by denying her the Foreman II training.  Whitley Decl. Exh. 1 - Complaint at ¶¶ 23, 40.

In an opinion dated, June 9, 2004, this Court granted summary judgment dismissing all of Whitley's claims.  See Whitley's Statement of Material Facts, Exh. 2, Whitley v. National Railroad Passenger Corp., Civil Action No. 03-00636 (RCL) Memorandum Opinion dated June 9, 2004.

Since filing her complaint in 2003, Whitley has applied for several  Foreman II positions with Amtrak.  Whitley Decl. at ¶ 6.  The Foreman II job title supervises Amtrak's skilled craft employees.  An applicant may qualify for a Foreman II position

through either mechanical experience or by completing one of the Foreman II training classes offered at Amtrak.  Whitley Decl. at ¶ 7.

On May 30, 2004, Campbell, yelled at Whitley's co-Plaintiff David Stevens, that Campbell was not one to be "fucked" with.  Declaration of David Stevens ("Stevens Decl.") ¶ 17.  Campbell said: "you see I like you but you are going to put my name in that fucking shit, but you are better off fucking with those white people than fucking with me."  Declaration of Terrell Williams ("Williams Decl.") ¶ 3.  Campbell threatened Stevens: "I will destroy a mother fucker like you," and: "if you ever put my name in anything else, you would wish you didn't."  Stevens Decl. ¶¶ 16-17.  Terrell Williams signed a sworn statement corroborating Stevens' version of events.  Pl. Statement of Material Facts – Statement of Terrell Williams.

By June of 2004, Whitley had completed the classes that would qualify her to work as a Foreman II.  Whitley Decl. ¶ 10; Whitley Decl. Exh. 3 - copy of certification card.  According to Amtrak's policies, the completion of this program qualified her to work as a Foreman II.  Whitley Decl. ¶ 7.  Despite having completed the program, however, Whitley was not selected for a Foreman II position.  Both Bernard Campbell and Michael Kapela, Whitley's supervisors, knew that Whitley had taken the Foreman II classes.  Whitley Decl. ¶ 12.  However, both declined to recommend her, in retaliation for her prior complaints and lawsuit.  Whitley Decl. ¶ 22.

Amtrak maintains that disciplinary action may preclude promotion.  On March 30, 2004, Amtrak gave Whitley a Notice to Impose Discipline for allegedly failing to tag some equipment for repair.  Whitley Decl. ¶ 3.

Whitley was interviewed numerous times for Foreman II vacancies.  Whitley Decl. ¶ 13.  During her interviews, Whitley was not told that there was a question as to

her qualifications. Whitley Decl. ¶ 14.  Before Bob Frank interviewed Whitley in 2004, she had been informed not to expect technical questions about the mechanical craft in the interview. Whitley Decl. ¶ 15.  However, when Bob Frank interviewed Whitley in 2004, she was asked numerous technical questions, over the objection of her union representative, who was present.  Whitley Decl. ¶ 16.  Whitley answered those questions anyway.  Whitley Decl. ¶ 17.  Frank continued to ask for the same information she had already provided in various different ways.  Whitley Decl. ¶ 18.  She thought he was trying to get her to answer the same question in a different way, which would have been inconsistent.   Whitley Decl. ¶ 19.  Whitley believes that those questions were asked for purposes of undermining her application.  Whitley Decl. ¶ 20.  Frank, Campbell and Kapela are the responsible management officials with authority to make the Foreman II position selections.   Whitley Decl. ¶ 21.  Whitley believes they refused to recommend or select her because of my prior protected activity including her civil lawsuit against Amtrak.  Whitley Decl. ¶ 22.

In approximately August 2004, Whitley asked Bernard Campbell why she didn't get the Foreman II job. Whitley Decl. ¶ 25.  Whitley pointed out to Campbell that she believed that the charges of misconduct relating to the shampoo machine were bogus and unfounded and that had never been in trouble or counseled before.  Whitley Decl. ¶ 26.  He answered her by referring to her prior lawsuit, reminding her that she had gone after "those white motherfuckers," and asking her: "do you think those motherfuckers are gonna forget?" Whitley Decl. ¶ 27.  For emphasis, he added: "do you think that?" Whitley Decl. ¶ 28.  Whitley answered him that she was not surprised that upper management would retaliate against her because she went after them. Whitley Decl. ¶ 29. Campbell's response was to the effect that they were not retaliating, but rather were

"just not moving" her.  Whitley Decl. ¶ 30.  Campbell then said that, to retaliate, they

would have to do something like fire her.  Whitley Decl. ¶ 31.  Campbell said that: "It's a

thing they say to you in court: no harm, no foul." Whitley Decl. ¶ 32.  Exasperated,

Whitley asked him if she would have to wait a whole year to get promoted.  Whitley

Decl. ¶ 33.  He responded: "Oh you might have to wait a whole year and a half.  Whitley

Decl. ¶ 34.  He also asked her: "Why did you think you could do that?  Whitley Decl. ¶

35.

On September 1, 2004, however, Amtrak withdrew the disciplinary action due to

evidence that Whitley was innocent of the alleged misconduct.  Whitley Decl., ¶ 36;

Whitley Decl. Exh. 4 – September 1 letter.[1]  Thus, while, in theory, Whitley may have

been disqualified for selections that occurred prior to September 1, 2004 -- due to the

Notice to Impose Discipline -- at least three of the selections appear to have occurred

after the disciplinary action was withdrawn.  See Def. motion for summary judgment,

Affidavit of Sarah Rey, Exhibit B.  Gary Lewis, a General Foreman at Amtrak told

Whitley, however, that Leslie White was disciplined and still promoted to a Foreman II

position within one year of receiving the discipline.  Whitley Decl. ¶ 37.

In addition, not only did Defendant harbor retaliatory animus toward Whitley,

but the evidence suggest that Amtrak also engaged in sex discrimination in regard to the

Foreman II promotion.  According to Defendant's own summary of successful

applicants, of the eleven selectees, only two were women.  Nine selectees for the

Foreman II position were, therefore, men.  See Exh. B to Declaration of Sarah Ray.

---

[1] Due to a numbering error, it appears as if this opposition should contain an Exhibit 3.  There is no Exhibit 3 in connection with this motion, however.

### III.     ARGUMENT

Defendant has filed a motion to dismiss or in the alternative motion for summary judgment in this case.  Defendant contends that Whitley's complaint does not state a claim because she was not qualified for a Foreman II position.  Defendant further argues that Whitley's claim for denial of training for the Foreman II position was disposed of in her prior lawsuit and, thus, is barred by the doctrine of res judicata.

### IV.     ARGUMENT:          THE MOTION TO DISMISS MUST BE DENIED

In considering a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kenneda v. United States, 880 F.2d 1439, 1442 (D.C. Cir. 1989).  The factual allegations of the complaint must be presumed true and construed in the light most favorable to the plaintiff.  Zoelsch v. Arthur Andersen & Co., 262 U.S. App. D.C. 300; *824 F.2d 27, 33 (D.C. Cir. 1987;)*; Shear v. National Rifle Ass'n of Am., 196 U.S. App. D.C. 344, 606 F.2d 1251, 1253 (D.C. Cir. 1979).  Moreover, the plaintiff is entitled to all favorable inferences that may be drawn from those allegations.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In her complaint, Whitley alleges that she engaged in protected activity by filing and litigating an employment discrimination lawsuit in 2003 and 2004.  In 2004 , Whitley's applications for promotion into the Foreman II position were rejected in favor of other applicants.  Whitley also alleged that she was better qualified than several of the individuals selected for the positions for which she applied. See Whitley Decl. Exh. 1 - Complaint ¶¶ 39-47.  Drawing all favorable inferences in Whitley's favor, as the Court

must when considering a motion to dismiss, the Court must infer that the denials of promotion were in retaliation for her prior complaints and not for some less-favorable reason.  Moreover, Defendant has not offered any evidence that Whitley cannot prove that she applied for the positions, was not selected, or that she was not the better-qualified applicant.  Thus, to the extent that Defendant's motion could possibly be construed as a motion to dismiss under Rule 12(b)(6) (which it should not), the motion must fail.

Though styled in part as a Motion to Dismiss, Defendant does not appear to have made **_any arguments_** that would support a dismissal under Fed. R. Civ. P. 12(b)(6). Defendant has relied on Whitley's complaint from her first discrimination lawsuit, Civil Action No. 03-00636-RCL, filed in March 2003, this Court's Memorandum Opinion in Civil Action No. 03-00636-RCL, and the Declaration of Sarah Ray and two attached exhibits - a job posting and list of selectees for the Foreman II position.  None of these documents are part of the pleadings in this case.  Fed R. Civ. P. 12(c) states that "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  **_As Defendant has completely relied on documents outside of the pleadings_**, Plaintiff respectfully requests that the Motion to Dismiss be denied, and that the Court apply the Fed. R. Civ. P. 56 standards to the instant motion.

### V.     ARGUMENT: THE MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

#### A.     APPLICABLE PRINCIPLES FOR SUMMARY JUDGMENT

The standards for considering defendant's motion are well known:

Under Rule 56(c) of the [F.R.C.P.], summary judgment is to be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The district judge, in ruling on a summary judgment motion, must assume the truth of the nonmovant's evidence, and draw all justifiable inferences in that party's favor.  Bayer v. United States Dep't of the Treasury, 294 U.S. App. D.C. 44, 956 F.2d 330, 333 (1992), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).   The court must view the evidence in the light most favorable to the nonmoving party and must not assess witness credibility.  See Aka v. Washington Hosp. Ctr., 332 U.S. App. D.C. 256, 156 F.3d 1284, 1288, 1298 (D.C. Cir. 1998;) (en banc); Mackey v. United States, 8 F.3d 826, 829 (D.C. Cir. 1993).  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those positions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Furthermore, "the record must show the movant's right to [summary judgment] with such clarity as to leave no room for controversy," and must demonstrate that the

opposing party "would not be entitled to [prevail] under any discernible circumstances." McKinney v. Dole, 765 F. 2d 1134, 1135 (D.C. Cir. 1985,), citing Williams v. W.M.A.T.A., 721 F.2d at 1415.  The burden of making such a showing is on the party moving for summary judgment.  McKinney v. Dole, 765 F.2d at 1134-35 (D.C. Cir. 1985,).

> **B.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT HERE, SINCE WHITLEY HAS PRESENTED SUFFICIENT EVIDENCE OF RETALIATORY MOTIVE AND/OR PRETEXT, WITH REGARD TO WHITLEY'S CLAIM THAT DEFENDANT UNLAWFULLY DENIED HER PROMOTION IN RETALIATION FOR HER PROTECTED ACTIVITY, INCLUDING FILING A CIVIL SUIT AGAINST DEFENDANT, IN VIOLATION OF THE HUMAN RIGHTS ACT**

> 1.    Applicable Principles

The District of Columbia Human Rights Act, D.C. Code § 2-1402.61, prohibits employers from undertaking adverse employment actions "on account of" an employee's activities protected by that Act.  It states:

> D.C. Code § 2-1402.61, on "coercion or retaliation," states as follows:

> (a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

Summary judgment is unavailable where a Plaintiff presents sufficient evidence from which a reasonable jury could find that an adverse employment action was motivated by discriminatory reasons.[2] Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 866 (D.N.C. 2003). Thus, if a plaintiff can demonstrate that there is a genuine issue of material fact that her non-promotion was motivated by an impermissible

---

[2]    Also See D.C. Code § 2-1402.11 forbidding actions due "wholly or partially" to an unlawful discriminatory motive.

criterion, she survives a defendant's motion for summary judgment. Id., citing Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc., 285 F. Supp. 2d 1180, 1197 (D. Iowa 2003).

Discrimination and retaliation are as susceptible to proof by circumstantial evidence as any other factual issue. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983). "Since direct evidence of discriminatory treatment is rarely present [in an employment discrimination case], plaintiff ordinarily must rely on 'circumstantial' rather than direct evidence to infer such motivation." Jones v. Trailways Corp., 477 F.Supp. 642, 646 (D.D.C. 1979). See Also Aka, 156 F.3d at 1288-89.

Discrimination or retaliation can always be proved by circumstantial evidence alone; employer confessions or admissions, otherwise known as "direct evidence," are not required. Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000). In Reeves, Justice O'Connor wrote for the Court that this holding was consistent with the general principle of law that a jury may consider a party's dishonesty as evidence of guilt. The unanimous opinion made it clear that the fact finder may find for the employee based on inferences alone, except in the rare instance of a case where the employer's asserted rationale is disproved, but there exists independent evidence that discrimination did not really motivate the adverse action. Reeves was consistent with the Supreme Court's earlier holding in Hicks v. St. Mary's Honor Center, 509 U.S. 502, 511 (1993), that in Title VII- type cases, "the fact-finder's disbelief of the reasons put forward by defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination."

The plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). The burden "is not onerous." Id. As adapted from

the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), line of cases, the elements of the plaintiff's prima facie case of retaliation as follows:  the plaintiff must establish that he engaged in protected activity, that the employer took an adverse employment action against him, and that there was a nexus between the adverse action and the exercise of his rights."  Cones v. Shalala, 199 F.3d 512 (D.C. Cir. 2000); Carter-Obayuwana v. Howard University, 764 A.2d 779 (D.C. 2001), citing McKenna v. Weinberger, 234 App. D.C. 297, 729 F.2d 783, 790 (D.C. Cir. 1984); Arthur Young & Co. v. Sutherland, 631 A.2d 354, 368 (D.C. 1993).  Where there is close temporal proximity between the discrimination complaint and the adverse action, the facts are sufficient to establish the requisite causal connection.  Cones, 199 F.3d at 521.

Once a plaintiff has established a prima facie case, however modest it may appear, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action.  Guerra v. Dept. of the Treasury, 42 FEP Cases 1149, 1152 (D.D.C. 1987), citing Burdine, 450 U.S. at 254.  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse personnel action].  The explanation provided must be legally sufficient to justify a judgment for the defendant."  Id. at 255.  "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts.  In general, the more idiosyncratic or questionable the employer's reasons, the easier it will be to expose it as a pretext, if indeed it is one."  Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979).

If the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext

alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative).'" <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004).

>    2.    <u>Applicable Principles For Proving Retaliation By Showing The Employer Was Motivated By Retaliatory Animus</u>

As the Eleventh Circuit has held, it would be inappropriate to grant summary judgment to Defendant where Plaintiff has provided ***direct evidence of discriminatory motive***, because the issue turns largely on whose witnesses are believed: "Such a credibility determination can be made only after trial. . ." <u>Wright v. Southland Corporation,</u> 187 F.3d 1287, 1305 (11th Cir. 1999).

In <u>Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc</u>., 285 F. Supp. 2d at 1197, the United States District Court for the District of Iowa held that, in applying <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), and 42 U.S.C. § 2000e-2(m), once the <u>McDonnell Douglas</u> framework "disappears" because the defendant proffers a legitimate reason for its conduct, the plaintiff can survive summary judgment even without showing that the employer's proffered reason is false.  The plaintiff may survive summary judgment simply by showing that even if the defendant's reason is true, there exists a genuine issue of material fact that another "motivating factor" for the defendant's conduct was the employee's protected characteristic. Such evidence adequately manifests a "mixed motive." <u>Dunbar</u>, 285 F.Supp. 2d at 1197.

The <u>Dunbar</u> analysis applies to claims brought under the Human Rights Act, not just under the federal Title VII, because the <u>Dunbar</u> logic is equally applicable to the Human Rights Act, which, like Title VII, also has an absence of any heightened proof

standards in its text.  Thus, in <u>Rachid v. Jack in the Box, Inc</u>., 376 F.3d 305, 312 (5th Cir. 2004), the Fifth Circuit held that "given that the language of the relevant provision of the ADEA is [like the pre-1991 Title VII] silent as to the heightened direct evidence standard, and the presence of heightened pleading requirements in other statutes, we hold that direct evidence of discrimination is not necessary to receive a mixed-motives analysis for an ADEA claim." <u>Id</u>.  Accord <u>Estades-Negroni v. Assocs. Corp. of N. Am</u>., 345 F.3d 25, 31 (1st Cir. 2003) (holding that after <u>Desert Palace</u> the mixed-motives analysis applies in ADEA cases even without direct evidence of discrimination); <u>Strauch v. Am. College of Surgeons</u>, 301 F. Supp. 2d 839, 844 (N.D. Ill. 2004) ("Given the similarities in text and purpose between Title VII and ADEA, as well as the consistent trend of transferring the various proof methods and their accompanying rules from one statute to the other, this Court considers it likely that whatever doctrinal changes emerge as a result of <u>Desert Palace</u> in the Title VII context will be found equally applicable in the ADEA arena."); <u>Thompson v. Proviso Twp. High Schs. Dist</u>. 209, 2003 U.S. Dist. LEXIS 12015, No. 01-C-5743, 2003 WL 21638808, at *8 (N.D. Ill. July 10, 2003).

        3.    <u>Applicable Principles For Proving Retaliatory Intent By Showing Pretext</u>

To proceed by showing pretext, the plaintiff must show either "that the asserted reasons were insufficient to explain the employer's decision or were not applied in a nondiscriminatory fashion, or by proving that a discriminatory reason more likely motivated the employer."  <u>Burdine</u>, <u>supra</u>, 450 U.S. at 256; <u>McDonnell-Douglas</u>, <u>supra</u>, 411 U.S. at 804-05.

The United States Court of Appeals for the D.C. Circuit has recently attempted to clarify what is required of a plaintiff at this stage, holding that:

Assuming then that the employer has met its burden of producing a
nondiscriminatory reason for its actions, the focus of proceedings at trial
(and at summary judgment) will be on whether the jury could infer
discrimination from the combination of (1) the plaintiff's prima facie case;
(2) any evidence the plaintiff presents to attack the employer's proffered
explanation for its actions; and (3) any further evidence of discrimination
that may be available to plaintiff (such as independent evidence of
discriminatory statements or attitudes on the part of the employer) or any
contrary evidence that may be available to the employer (such as
evidence of a strong track record in equal opportunity employment).

Aka., 156 F.3d at 1289.

Once the Plaintiff has shown a causal connection, even absent direct evidence of

retaliatory animus, there must be a trial if there is evidence of pretext.  One form of

evidence from which a jury may be able to infer discriminatory intent is "evidence the

plaintiff presents to attack the employer's proffered explanation for its actions." McGill

v. MuNoz, 2000 U.S. App. Lexis 2418 (D.C. Cir. 2000), citing Aka, 156 F.3d at 1288, 1298

(noting that the "sufficiency of the finding of pretext to support a finding of

discrimination depends on the circumstances of the case").

The Seventh Circuit, in a helpful formulation, stated that a plaintiff can avoid

summary judgment in a discharge case by showing: (1) that the defendant's proffered

reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the

action; or (3) that [the reasons] were insufficient to motivate the action.  Collier v. Budd

Co., 66 F.3d 886, 890 (7th Cir. 1995).   When the non-movant plaintiff shows that at least

some of the reasons asserted by the defendant for its actions are pretextual, such

evidence is sufficient to defeat summary judgment.

Evidence of prior or subsequent retaliatory acts can be highly probative.

It is a general rule that other evidence of discrimination by the employer is admissible

regarding an employer's motive in taking adverse action against an employee.  Hairston

v. WMATA, 1997 U.S. Dist. Lexis 5188 (D.D.C. 1997)(Hogan, J.); Estes v. Dick Smith

Ford, Inc., 856 F.2d 1097, 1104 (1988)(interpreting Fed. R. Evid. 404).   Such evidence is

admissible under Rule 404(b) of the Federal Rules of Evidence "to show motive and

intent," "critical" issues in any discrimination or retaliation case.   Hogan v. American Tel.

& Tel. Co., 812 F.2d 409, 410 (8th Cir. 1987); Accord, Phillips v. Smalley Maintenance

Services, 711 F.2d 1524, 1532 (11th Cir. 1983); Morris v. Washington Metro. Area Transit

Authority, 702 F.2d 1037, 1045 (D.C. Cir. 1983) (prior acts of employer admissible as

bearing on whether improper motive was cause of retaliatory discharge); Goff v.

Continental Oil Co., 678 F.2d 593, 597 n.3 (5th Cir. 1982); Miller v. Poretsky, 595 F.2d 780,

784 (D.C. Cir. 1978) (prior acts of landlord towards other black tenants admissible as to

whether plaintiff, also a black tenant, was discriminated against).

### C.   AMTRAK FAILED TO PROMOTE WHITLEY IN RETALIATION FOR HER PROTECTED OPPOSITION TO ITS DISCRIMINATORY CONDUCT AND PARTICIPATION IN A CIVIL LAWUIT

#### 1.   Whitley's Prima Facie Case of Retaliation

In this case, Defendant has not challenged the sufficiency of Whitley's prima

facie case.  Indeed, it is undisputed that she satisfies all of the three prima facie elements.

As discussed below, Defendant does not dispute that Whitley engaged in statutorily

protected activity through the filing of her lawsuit alleging sexual harassment, sex

discrimination and retaliation under Title VII and the D.C. Human Rights Act in March

of 2003.  See Thorne, 782 F.Supp. at 680 (employment discrimination lawsuit protected

activity).  Nor does Defendant dispute that denial of a promotion would qualify as an

adverse action.   Elam v. D.C. Fire & EMS Dep't, 2005 U.S. Dist. LEXIS 16936 (D.D.C.

2005) ("There can be no question that denial of a promotion, even if it is only to a

temporary position, can constitute an adverse employment action.") (citing Hunt v. City

of Markham, 219 F.3d 649, 654 (7th Cir. 2000)); Powell v. Wash. Metro. Area Transit

Auth., 238 F. Supp. 2d 160, 165 (D.D.C. 2002) (denial of promotion adverse action).

      Moreover, it is undisputed that a causal connection exists between Whitley's

complaints and her nonselection.  Thus, as shown in the facts, pp. 2-3, on March 7, 2003,

Whitley filed a civil complaint against Amtrak alleging sexual harassment, sex

discrimination, and retaliation.  She alleged therein that her supervisor, Frank Cover,

sexually harassed her and withheld training for a Foreman II position and promotions

because she would not submit to his sexual advances.  Whitley also alleged in that suit

that Amtrak retaliated against her by denying her the Foreman II training.  After filing

her suit in 2003, Whitley applied for Foreman II positions. Despite being qualified,

however, Whitley was never selected.

      As shown in the fact, pp. 2-4, Defendant's primary decision makers for the

promotion were Bob Frank, Bernard Campbell and Michael Kapela.  All three knew that

Whitley had sued Amtrak. Indeed, Campbell and Kapela were deposed in November

2003 in that litigation, and Frank was the recipient of Whitley's internal complaint

regarding Cover. Frank also displayed his displeasure toward Whitley for this in 2004,

by refusing to speak to her and by badgering her during her interview with redundant

questions.  As shown in the facts, pp. 4-5, in approximately August 2004, Whitley asked

Bernard Campbell why she didn't get the job. Whitley pointed out to Campbell that

Whitley had never been in trouble or counseled.  He answered her by referring to her

prior lawsuit, reminding her that she had gone after "those white motherfuckers," and

asking her: "do you think those motherfuckers are gonna forget?"  For emphasis, he

added: "do you think that?" Whitley answered him that she was not surprised that

upper management would retaliate against her because she went after them.

Campbell's response was to the effect that they were not retaliating, but rather were "just not moving" her.  Campbell then said that, to retaliate, they would have to do something like fire Whitley. Campbell said that: "It's a thing they say to you in court: no harm, no foul." Exasperated, Whitley asked him if she would have to wait a whole year to get promoted.  He responded: "Oh you might have to wait a whole year and a half. He also asked her:  "Why did you think you could do that?  Based on all this, it is more than apparent that a causal connection existed between the lawsuit and the failure to promote Whitley.

        2.        <u>Defendant's Alleged Legitimate, Non-Discriminatory Reason</u>

Defendant (Br. at 2-3) contends that Whitley was not selected for a Foreman II position because she did not have experience in skilled craft and had not taken the Foreman II training classes.  Defendant further asserts that Whitley was disqualified from consideration because she had been disciplined prior to the selections.

Although Plaintiff disputes the veracity of these claims, she does not dispute that this reason, if in fact true, would satisfy Defendant's burden at this stage of the analysis.

        3.        <u>There Exists Direct Evidence of Retaliatory Animus In This Case, Which Creates a Dispute of Fact That The Failure to Promote Whitley Was Motivated By Retaliatory Animus, Sufficient To Require Trial</u>

In this case, Defendant's motivation and intent to retaliate is well demonstrated by Campbell's explanation of Defendant's retaliatory actions to Whitley.  Thus, as shown in the facts, pp. 4-5, Campbell described Defendant's retaliatory mindset to her openly in August 2004, during the same time period in which Campbell was attempting to oust Whitley's co-Plaintiff David Stevens.  Campbell told Whitley that she had not been promoted because she that she had "gone after" "those white motherfuckers," by filing her EEO lawsuit.  Campbell asked Whitley rhetorically: "do you think those

motherfuckers are gonna forget?"  For emphasis, he added: "do you think that?"
Whitley answered him that she was not surprised that upper management would
retaliate against her because she went after them.

Campbell's response to Whitley's expression of lack of surprise that she was
being retaliated against, was most revealing.  He said Amtrak was "***not retaliating,*** " but
rather was "***just not moving*** [promoting]" her. (Emphasis added.)  Campbell then said
that, in order to meet the legal definition of retaliation, Amtrak would have to do
something like fire Whitley.  Campbell summed it up: "It's a thing they say to you in
court: no harm, no foul."

Campbell's August discussion with Whitley operates as an admission of a party
opponent, that Amtrak was "not moving" Whitley up to Foreman II because Amtrak's
management would not "forget" her very recent lawsuit against them.  This evidence
alone requires trial in this case. See <u>Wright,</u> 187 F.3d at 1305 ("it would be inappropriate
to grant summary judgment to Defendant where Plaintiff has provided ***direct evidence***
***of discriminatory motive****,* because the issue turns largely on whose witnesses are
believed: "Such a credibility determination can be made only after trial. . ."); <u>Dunbar,</u>
285 F.Supp.2d at 1197.

Furthermore, as shown in the facts, p. 3, Campbell openly signaled Amtrak's
motive, intent and retaliatory state of mind, by threatening to terminate Stevens on May
30, 2004, in response to his complaint of discrimination, then firing him when he did not
desist in his protected activity.  Indeed, the tone and manner of Campbell's tirade in
which he followed Stevens and yelled at him, among other things, that Campbell was
not one to be "fucked" with, and that Campbell  ". . . "will destroy a mother fucker like
[Stevens]," and: "if you ever put my name in anything else, you would wish you

didn't," is highly probative proof that Amtrak reacted to EEO protests and lawsuits

against as a major affront. Under these circumstances, there can be no doubt that Stevens

has demonstrated Defendant's retaliatory animus sufficiently to preclude summary

judgment.

> 4.    <u>Defendant's False Assertion that Whitley Was Not Qualified For
> the Foreman II Position Evidences Pretext.</u>

Defendant contends that Whitley was not qualified to serve as a Foreman II, and

that summary judgment is therefore appropriate.

However, according to Amtrak's own policies, it cannot be disputed that Whitley

would have been qualified for any available Foreman II position for which the selections

occurred after June 2004, by which she had completed all her training and received her

certification.  Moreover, as shown in the facts, pp. 3-4, it is undisputed that Defendant's

top managers repeatedly interviewed Whitley for the promotion, including in 2004.

Whitley, therefore, has shown that Defendant's assertion that she was not qualified for

the Foreman II position because she lacked the required training is obviously false and a

pretext for unlawful retaliation.  See <u>Hayes v. Principi</u>, 284 F.Supp.2d 40, 49 (2003)

(plaintiff's showing that "she was recommended for a promotion, given high ratings in a

performance appraisal and received a customer service award for outstanding customer

service . . . just months before her termination" for allegedly poor job performance and

customer service is evidence of pretext); <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d

265, 269 (3d Cir. 2005) (evidence that plaintiff did not engage in conduct defendant cited

as examples of poor performance raises issues of material fact as to employer's

motivation for termination).

Amtrak attempts to bolster its argument by asserting that it discontinued the Foreman II training program in 2001. However, Whitley testified that Amtrak still offered the classes necessary to qualify to perform the Foreman II duties after 2001. Whitley Decl. at ¶ 5. In fact, Whitley took all the required classes by June 2004 on her own time while working full-time as a Foreman I and received her certification card showing the courses taken and the dates she passed certification. See Whitley Decl. Exhibit 4 – certification card.

Defendant maintains that Whitley was not qualified for the position. Thus, Sarah Ray, Defendant's Human Resources Manager, stated in her declaration that "Amtrak requires all Foreman II to have direct mechanical experience working in a mechanical skilled position." Declaration of Sarah Ray ("Ray Decl.") at ¶ 9, attached to Defendant's motion. Although Defendant asserts that Whitley does not have mechanical experience, Ray further admitted that "[f]or a period of time, Amtrak allowed employees to satisfy this requirement by completing an extensive Foreman II training course, which gave participants skilled craft experience." (Ray Decl. at ¶ 11). Whitley took those very classes throughout the year 2004. Defendant has not offered any evidence whatsoever that its job requirements for the Foreman II position changed from 2001 to 2004 and, thus, that the Whitley's training and certification fail to demonstrate the necessary skills for the Foreman II such that she would fail to qualify for the position. Under the circumstances, the assertion that Whitley was not promoted because she lacked the basic qualifications appears to have been pretextually ginned up for litigation purposes, and cannot be the basis for an early dismissal of this suit.

5.    Defendant's Contention That Whitley Was Ineligible For Promotion on Account of Misconduct—Even Though She Was Cleared of That Misconduct And Other Employees Were Promoted Despite Being Disciplined. -- Demonstrates Pretext

Defendant (Br. at 4) asserts in a footnote that Whitley was disqualified for consideration for promotion because she received discipline in April 2004.  Defendant contends that under Amtrak policy, employees are ineligible for promotion one year after they receive discipline.

Although Whitley admits that she received a Notice to Impose Discipline, Defendant self-servingly fails to note that on September 1, 2004, it is undisputed that **Whitley was cleared of any misconduct and her personnel file expunged**.  See Whitley Decl., Exhibit 5 - (letter from Tana to Campbell).  Thus, according to Defendant's own chart (Exhibit B to Declaration of Sarah Ray), which shows that three of the selections for the Foreman II position occurred after September 1, 2004, Whitley was not disqualified for promotion, as Defendant contends.  "Resort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct." Sheridan V. E.I. Dupont De Nemours & Co., 100 F.3d 1061 (3d Cir. 1996)(en banc), quoting Binder v. Long Island Lighting Co., 57 F.3d 193, 200 (2d Cir. 1995). Here, Defendant has advanced a demonstrably false legal position, obviously in order to escape responsibility for its unlawful attempt to exact vengeance from Whitley for her lawsuit. On this ground alone, Defendant's motion could easily be denied.

Moreover, as shown in the fact, p. 5, Whitley testified that her General Foreman, Gary Lewis, told her that Leslie White, one of the selectees for the Foreman II position,

had been promoted despite receiving discipline within the prior year. Although more typically asserted in the prima face stage of a discrimination claim,[3] it is an accepted tenet of employment discrimination litigation that the fact that an employer treated similarly situated employees more favorably is strong evidence of discrimination. Galdamez v. Xerox Corp., 2005 U.S. Dist. LEXIS 3578 (D.D.C. 2005) (citing McManus v. MCI Communications Corp., 748 A.2d 949, 954 (D.C. 2000)). In this case, Amtrak's promotion of White to the Foreman II position despite being disciplined is further evidence that Defendant's reasons for not promoting Whitley are pretextual.

Thus, Whitley has shown that Defendant's reasons for denying her a promotion to the Foreman II position – that she did not have the requisite training and was disqualified because of a prior disciplinary action – are untrue and/or pretextual, indeed, mere attempts by Defendant to take "flight" from the "scene of the crime." Therefore, Court should deny summary judgment and allow this case to proceed to discovery.[4]

## VI.    WHITLEY WAS DISCRIMINATORILY DENIED PROMOTION ON ACCOUNT OF HER SEX

### A.    PROOF REQUIRED TO SUPPORT A DISCRIMINATION CLAIM

To set forth a prima facie case of sex discrimination, Whitley must show:

(i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii)

---

[3]    Evidence presented at the prima facie stage is also relevant at the pretext stage of the analysis. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 274, 2749 (U.S. 1993) ("factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination"); Clifton v. Fannie Mae, 36 F. Supp. 2d 20, 23 (D.D.C. 1999) (plaintiff's prima facie case part of pretext analysis) (citing Aka v. Wash. Hosp. Ctr., 332 U.S. App. D.C. 256 (D.C. Cir. 1998)).

[4]   Defendant also argues that any claim that Whitley was not allowed to participate in Foreman II training is barred by the doctrine of *res judicata*. Whitley has asserted no such claim in the instant complaint, however.

> that, despite [her] qualifications, [s]he was rejected; and (iv) that, after
> [her] rejection, ***the position remained open and the employer continued
> to seek applicants from persons of complainant's qualifications***."

(emphasis added.) <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817,

1824, 36 L. Ed. 2d 668 (1973); <u>EEOC v. Catholic University of America</u>, 317 U.S. App.

D.C. 343; 83 F.3d 455, 475 (D.C. Cir. 1996)(applying the prima facie test to a claim for

promotion to tenured position); <u>See</u> <u>Also</u> <u>Neuren v. Adduci, Mastriani, Meeks & Schill</u>,

43 F.3d 1507, 1512 (D.C. Cir. 1995); <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 85-89 (D.C. Cir.

1985)(reversing dismissal of discrimination claim); <u>McKenna v. Weinberger</u>, 234 U.S.

App. D.C. 297; 729 F.2d 783, 788 (D.C. Cir. 1984).  Proving the prima facie case is not

supposed to be onerous.  <u>Davenport v. Riverview Gardens School District</u>, 30 F.3d 940,

944 (8th Cir. 1994).

　　　　"Once a plaintiff has established a prima facie case of discrimination, however

modest it may appear, the burden shifts to the defendants to articulate some legitimate,

nondiscriminatory reason for the challenged action."  <u>Guerra v. Dept. of the Treasury</u>, 42

FEP Cases 1149, 1152 (D.D.C. 1987), citing  <u>Dep't of Community Affairs v.  Burdine</u>, 450

U.S.  254 (1981).  "To accomplish this, the defendant must clearly set forth, through the

introduction of admissible evidence, the reasons for the [adverse personnel action].  The

explanation provided must be legally sufficient to justify a judgment for the defendant."

<u>Id</u>. at 255.  "The reasonableness of the employer's reasons may of course be probative of

whether they are pretexts.  In general, the more idiosyncratic or questionable the

employer's reasons, the easier it will be to expose it as a pretext, if indeed it is one."

<u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979).

　　　　If the defendant meets this burden, the plaintiff must show that the proffered

reason was pretextual, "either by showing that the asserted reasons were insufficient to

explain the employer's decision or were not applied in a nondiscriminatory fashion, or by proving that a discriminatory reason more likely motivated the employer." Burdine, supra, 450 U.S. at 256, 101 S.Ct. at 1095; McDonnell-Douglas, supra, 411 U.S. at 804-05, 93 S.Ct. at 1825." T&S Service Associates, Inc. v. Crenson, 666 F.2d 722, 725-726 (1st Cir. 1981).  As the Supreme Court held in Hicks v. St. Mary's Honor Center, 509 U.S. 502, 511 (1993), "The fact-finder's disbelief of the reasons put forward by defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination."  See also Barbour v. Merrill, 48 F.3d 1270 (D.C. Cir. 1995), cert. granted in part, 116 S. Ct. 805, and cert. dismissed, 116 S. Ct. 1037 (1996).

 The precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." Swierkiewicz v. Sorema NA, 534 U.S. 506; 122 S. Ct. 992 (2002).

"Once a plaintiff has established a prima facie case of discrimination, however modest it may appear, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for the challenged action." Guerra v. Dept. of the Treasury, 42 FEP Cases 1149, 1152 (D.D.C. 1987), citing  Department of Community Affairs v. Burdine, 450 U.S.  254 (1981).  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse personnel action].  The explanation provided must be legally sufficient to justify a judgment for the defendant." Id. at 255.  "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts.  In general, the more idiosyncratic or questionable the employer's reasons, the easier it will be to expose it as a pretext, if indeed it is one." Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979).

If the defendant meets this burden, the plaintiff must show that the proffered reason was pretextual, "either by showing that the asserted reasons were insufficient to explain the employer's decision or were not applied in a nondiscriminatory fashion, or by proving that a discriminatory reason more likely motivated the employer." Burdine, supra, 450 U.S. at 256; McDonnell-Douglas, supra, 411 U.S. at 804-05. T&S Service Associates, Inc. v. Crenson, 666 F.2d 722, 725-726 (1st Cir. 1981). As the Supreme Court held in Hicks v. St. Mary's Honor Center, 509 U.S. 502, 511 (1993), "The fact-finder's disbelief of the reasons put forward by defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination." See also Barbour v. Merrill, 48 F.3d 1270 (D.C. Cir. 1995), cert. granted in part, 116 S. Ct. 805, and cert. dismissed, 116 S. Ct. 1037 (1996).

### B.  WHITLEY PROVIDES AMPLE PROOF THAT SHE WAS DISCRIMINATED AGAINST, SUCH THAT TRIAL IS REQUIRED

In this case, Whitley easily satisfies the prima facie case requirements. Thus, as shown in the facts, she applied for the positions, was qualified and therefore interviewed several times, she was never selected, and nine selectees for the Foreman II positions were men. See Exh. B to Declaration of Sarah Ray.

Defendant (Br. at 2-3) contends that Whitley was not selected for a Foreman II position because she did not have experience in skilled craft and had not taken the Foreman II training classes. Defendant further asserts that Whitley was disqualified from consideration because she had been disciplined prior to the selections.

As shown above with regard to retaliation, Defendant's asserted reasons for not promoting Whitley are blatantly pretextual. Indeed, ***Whitley was cleared of any***

*misconduct and her personnel file expunged*, such that the attempt to rely on that discipline highlights Defendant's unlawful conduct.  With regard to qualifications, Defendant cannot rebut the fact that Whitley was certified as qualified and that its own agents interviewed her numerous times for the positions, thus belying that contention. Finally, the Court should not forget Defendant's agent Campbell's admissions to both Whitley and Stevens that they were being mistreated because of their protected activities, which certainly belies Defendant's attempt to attribute the non-promotion of Whitley to the lawful factors they have argued to this Court.  Accordingly, the circumstances preclude summary judgment for Defendant at this time on the sex discrimination claim.

## VII.    ARGUMENT: THIS CASE MUST BE ALLOWED TO PROCEED TO DISCOVERY

Defendant has filed this motion for summary before the commencement of discovery.  At this point, the only material Whitley has at her disposal is her own knowledge of events and personal documents.  Summary judgment at this stage of the case is indisputably inappropriate.  Whitley asserts that discovery in necessary in order to gather sufficient evidence to defend against any additional summary judgment motion Defendant may file and to prepare for trial to show that Defendant's asserted reasons for denying her a promotion to a Foreman II are merely a pretext for a retaliatory motive.  By filing this motion for summary judgment prior to discovery, Defendant seeks to deprive Whitley of the opportunity to discover additional information that Defendant's reasons for failing to promote Whitley are pretextual.

The inquiry into the employer's motivations is "necessarily fact intensive." Barry v. United States Capitol, 2005 U.S.Dist. LEXIS 8381 (May 2, 2005).  Thus, "granting

a motion for summary judgment on this issue prior to providing the parties with any opportunity for discovery [was] clearly contrary to this Circuit's precedent." Id. at * 21-22.  See also Velikonja v. Mueller, 315 F.Supp.2d 66, 79-80 (2004), (plaintiff should be "afforded 'a reasonable opportunity to complete discovery'" to identify any comparators with which to demonstrate pretext, "before grappling with a summary judgment motion.'"  (quoting Martin v. Malhoyt, 830 F.2d 237, 256 (D.C.Cir. 1987)).  See also Information Handling Svcs. Inc. v. Defense Automated Priting Svcs., 338 F.3d 1024, 1032) (DDC 2003) ("Summary judgment ordinarily is proper only after the chance to take discovery.") (citations and internal quotations omitted); Paquin v. Fannie Mae, 119 F.3d 23, 28-29 (D.C. Cir. 1997) (plaintiff should have been provided opportunity to conduct discovery in order to refute defendant's legitimate nondiscriminatory reason for the adverse employment action).

In this case, Plaintiff has not yet had the opportunity to request documents showing the relative qualifications of the selectees.  Plaintiff has nothing at her disposal than Defendant's own self-crafted and possibly self-serving chart outlining the selectees' qualifications.  Nor has she had the opportunity to obtain documents supporting her assertion that Amtrak hired individuals after attending the Foreman II training courses and that at least one other employee had been promoted despite being disciplined. Whitley must be provided the opportunity to discover this kind of evidence; her assertions alone may not withstand an additional motion for summary judgment.  See Powell v. Wash. Metro. Area Transit Auth., 238 F. Supp. 2d 160, 165 (D.D.C. 2002) (lack of evidence regarding disparate treatment outside assertions in plaintiff's own affidavit insufficient to withstand motion for summary judgment).

## VII.    CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss or, in the

Alternative, Motion for Summary Judgment is unfounded and premature, and should

be denied by this Court with prejudice.  Whitley was denied promotion because of her

prior protected activity and her sex.  She respectfully requests that this Court allow her

to proceed with discovery and trial in this case.

Respectfully submitted,

THE GOLDSMITH LAW FIRM

/s/
_____

Leizer Z. Goldsmith
D.C. Bar No. 419544
1900 L Street, N.W., Suite 614
Washington, D.C. 20036
Telephone: (202) 775-0040
Facsimile: (202) 318-0798
Attorney For Plaintiff

Dated: November 30, 2005