IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| David B. Stevens<br><br>and<br><br>Mae Whitley,<br><br>      Plaintiffs,<br><br>    v.<br><br>National Railroad Passenger Corporation ("Amtrak"),<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:05CV01924-RCL<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF DISPUTED FACTS MATERIAL TO THIS CASE
IN SUPPORT OF MAE WHITLEY'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

1. Whitley began her employment with National Railroad Passenger Corporation ("Amtrak") as a coach cleaner in 1977. See Declaration of Mae Whitley ("Whitley Decl.") at ¶ 1.

2. In 1985 Amtrak Whitley applied for and was promoted to a Foreman I position. Whitley Decl. at ¶ 1.

3. The Foreman I position is a supervisory position located in Amtrak's Mechanical Department. Whitley Decl. at ¶ 1.

4. Whitley has held a Foreman I title from the date of her promotion in 1985 until the present. Whitley Decl. at ¶ 1.

5.  On March 7, 2003, Whitley filed a complaint against Amtrak alleging sexual harassment, sex discrimination, and retaliation. Whitley Decl. Exh. 1 - Complaint. Whitley v. National Railroad Passenger Corp., Case No. 1:03-CV-0636.

6.  In the complaint, Whitley alleged that her supervisor, Frank Cover ("Cover"), sexually harassed her and withheld training for a Foreman II position and promotions because she would not submit to his sexual advances. Whitley Decl. Exh.1 - Complaint at ¶¶ 8, 20.

7.  Whitley also alleged that Amtrak retaliated against her by denying her the Foreman II training. Whitley Decl. Exh. 1 - Complaint at ¶¶ 23, 40.

8.  By Order dated, June 9, 2004, this Court granted summary judgment dismissing all of Ms. Whitley's claims. *Whitley v. National Railroad Passenger Corp.*, Civil Action No. 03-00636 (RCL). Exh. 2, Memorandum Opinion dated June 9, 2004 attached to Whitley's Statement of Material Facts.

9.  Since her complaint in 2003, Whitley has applied for several Foreman II position with Amtrak. Whitley Decl. at ¶ 6.

10. The Foreman II job title supervises Amtrak's skilled craft employees. Whitley Decl. at ¶ 7.

11. Whitley has applied for several Foreman II positions since her complaint in 2003. Whitley Decl. ¶ 6.

12. An applicant may qualify for a Foreman II position through either mechanical experience or by completing one of the Foreman II training classes offered at Amtrak. Whitley Decl. at ¶ 7.

13. Although Amtrak discontinued the automatic Foreman II training course, it still offered courses to qualify an employee to work as a Foreman II.  Whitley Decl. at ¶ 8.

14. During 2004, Whitley took the classes that would qualify her for a Foreman II position.  Whitley Decl. at ¶ 9.

15. In June of 2004, Whitley completed the Foreman II training classes Whitley Decl. at ¶ 10; Whitley Decl. Exh. 4 - copy of certification card.[1]

16. According to Amtrak's policies, completion of the Foreman II training program would qualify Whitley to work as a Foreman II.  Whitley Decl. at ¶ 7.

17. Amtrak's supervisors, including Bernard Campbell and Michael Kapela knew tha Whitley had been taking and completed the Foreman II training classes. Whitley Decl. ¶ 12.

18. Whitley was interviewed numerous times for Foreman II vacancies. Whitley Decl. ¶ 13.

19. During her interviews, Whitley was not told that there was a question as to her qualifications. Whitley Decl. ¶ 14.

20. Before Bob Frank interviewed Whitley in 2004, she had been informed not to expect technical questions about the mechanical craft in the interview. Whitley Decl. ¶ 15.

21. However, when Bob Frank interviewed Whitley in 2004, she was asked numerous technical questions, over the objection of her union representative, who was present.  Whitley Decl. ¶ 16.

---

[1] Due to a numbering error, it appears as if this opposition should contain an Exhibit 3.  There is no Exhibit 3 in connection with this motion, however.

3

22. Whitely answered those questions anyway. Whitley Decl. ¶ 17.

23. Frank continued to ask for the same information she had already provided in various different ways. Whitley Decl. ¶ 18.

24. She thought he was trying to get her to answer the same question in a different way, which would have been inconsistent. Whitley Decl. ¶ 19.

25. Whitley believes that those questions were asked for purposes of undermining her application. Whitley Decl. ¶ 20.

26. Frank, Campbell and Kapela are the responsible management officials with authority to make the Foreman II position selections. Whitley Decl. ¶ 21.

27. Whitley believes they refused to recommend or select her because of my prior protected activity including her civil lawsuit against Amtrak. Whitley Decl. ¶ 22.

28. On March 30, 2004, Whitley received a Notice to Impose Discipline from Amtrak for allegedly failing to tag a shampoo wand for repair. Whitley Decl. ¶ 23.

29. Bernard Campbell participated in that false discipline against her. Whitley Decl. ¶ 24.

30. On May 30, 2004, Campbell, yelled at Whitley's co-Plaintiff David Stevens, that Campbell was not one to be "fucked" with. Declaration of David Stevens ("Stevens Decl.") ¶ 17.

31. Campbell said: "you see I like you but you are going to put my name in that fucking shit, but you are better off fucking with those white people than fucking with me." Declaration of Terrell Williams ("Williams Decl.") ¶ 3.

32. Campbell threatened Stevens: "I will destroy a mother fucker like you," and: "if you ever put my name in anything else, you would wish you didn't." Stevens Decl. ¶¶ 16-17.

33. Terrell Williams signed a sworn statement corroborating Stevens' version of events. Pl. Statement of Material Facts, Exh. 18 – Statement of Terrell Williams.

34. In approximately August 2004, Whitley asked Bernard Campbell why she didn't get the Foreman II job. Whitley Decl. ¶ 25

35. Whitley pointed out to Campbell that she believed that the March 30 charges of misconduct involving the shampoo machine were bogus and that she had otherwise never been in trouble or counseled. Whitley Decl. ¶ 26.

36. He answered her by referring to her lawsuit, reminding me that she had gone after "those white motherfuckers," and asking her: "do you think those motherfuckers are gonna forget?" Whitley Decl. ¶ 27.

37. For emphasis, he added: "do you think that?" Whitley Decl. ¶ 28.

38. She answered him that she was not surprised that upper management would retaliate against her because she went after them. Whitley Decl. ¶ 29.

39. Campbell's response was to the effect that they were not retaliating, but rather were "just not moving" her. Whitley Decl. ¶ 30.

40. Campbell then said that, to retaliate, they would have to do something like fire me. Whitley Decl. ¶ 31.

41. Campbell said that: "It's a thing they say to you in court: no harm, no foul." Whitley Decl. ¶ 32.

42. Exasperated, she asked him if she would have to wait a whole year to get promoted. Whitley Decl. ¶ 33.

43. He responded: "Oh you might have to wait a whole year and a half." Whitley Decl. ¶ 34.

44. He also asked her: "Why did you think you could do that?" Whitley Decl. ¶ 35.

45. On September 1, 2004, Amtrak withdrew the disciplinary action due to evidence that Whitley was innocent of the alleged misconduct. Whitley Decl. ¶ 36; Whitley Decl. Exh. 5.

46. General Foreman, Gary Lewis, told me that Leslie White, one of the selectees for a Foreman II position, was disciplined and still promoted to a Foreman II position within a year of the discipline. Whitley Decl. ¶ 37.

47. In addition, according to Defendant's own summary of successful applicants, of the eleven selectees for the Foreman II, only two were women. See Exh. B to Declaration of Sarah Ray attached to Defendant's motion.

Respectfully submitted,

THE GOLDSMITH LAW FIRM

/S/
_____
Leizer Z. Goldsmith
D.C. Bar No. 419544
1900 L Street, N.W., Suite 614
Washington, D.C. 20036
Telephone: (202) 775-0040
Facsimile: (202) 318-0798
Attorney For Plaintiff

Dated: November 30, 2005