IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| David B. Stevens, et. al | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:05CV01924-RCL ) |
| National Railroad Passenger Corporation ("Amtrak"), | ) ) ) ) |
| Defendant. | ) ) |

**Affidavit of Adam W. Marker**

1. My name is Adam W. Marker. I am over eighteen years of age and am competent to testify in a court of law.

2. I am an attorney employed at the Goldsmith Law Firm, LLC.

3. On January 2, 2007, I sent a subpoena, via FedEx, to CSC Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 1660, Baltimore, MD 21201. Exhibit 1.

4. My understanding is that CSC Lawyers Incorporating Service Company is the service agent for Concentra Health Services. I developed that understanding by reviewing records on the website of the Maryland State Department of Assessment and Taxation.

5. Through the Federal Express website, I confirmed that the subpoena was, in fact, received by CSC Lawyers Incorporating Service Company. Exhibit 2.

6. Between that point and February 21, 2007, I received no response to my subpoena, nor did I receive any communication whatsoever from anyone claiming to represent Concentra.

7. Consequently, on February 21, 2007, I telephoned Concentra headquarters, identified myself and my concern, and was directed to speak with Ms. Rhonda Groce.

8. Groce never claimed that Concentra had not been properly served, but she did not have a copy of the subpoena, so I faxed her a copy. I asked her when I could expect responsive documents, and she said that she believed she could respond by that Friday, which was February 23, 2007. Exhibit 3.

9. I expressed my appreciation of such a quick response.

10. Later that day, Groce confirmed receipt of my fax, and that she did not deny that the subpoena had been properly served on Concentra's Maryland agent for service of process as I had told her.

11. On the following day, February 22, 2007, Groce informed me that the subpoena was insufficient because it did not have Stevens' social security number and date of birth on it. She said that HIPAA requires provision of that information before she could comply with the subpoena. Groce had not mentioned that to me when she received my fax on the previous day.

12. Groce offered two options to correct the problem. She said that we could issue a corrected subpoena, or Stevens could sign a release with the appropriate information on it. Stevens subsequently signed a release, which I then faxed to Groce. Exhibit 4.

13. Either during this conversation or in a subsequent conversation on the same day, Groce informed me that the documents I was requesting were held in a storage facility. She said that Concentra could have those documents located from storage expeditiously, but she suspected that the documents could not be transported for pick up until Tuesday. I did not object to that.

14. Later in the day of February 22, 2007, I left a message for Groce, stating that additional documents would be needed. In that message, I inquired as to whether it was logical for Concentra to produce the additionally requested documents in the same package with the other documents, or if a separate subpoena package would be necessary. I explained that I understood that someone on behalf of Concentra was traveling to the storage facility to locate my requested documents, so I wanted to frame my second request so as to avoid inconveniencing Concentra employees.

15. Groce did not return my call that afternoon.

16. On February 23, 2007, I sent, via fax and service (via FedEx) on CSC Lawyers Incorporating Service Company, a subpoena for the additional documents we were seeking. Exhibit 5.

17. On February 26, 2007, I received a phone call from Mary Turner, identifying herself as general counsel for Concentra. She wanted to discuss the subpoenas.

18. Following the conversation, I incorporated my notes of the conversation into a confirming letter to her. Exhibit 6.

19. In that conversation, Turner indicated an interest in complying with the first subpoena, but stated that she could not locate documents indicating that Stevens was at Concentra on December 13, 2004. Turner asked whether it was possible that we

3

were confused as to the relevant dates. Accordingly, she requested documentation as to the fact that Stevens visited Concentra on December 13, 2004.

20. Pursuant to her request, I included documentary evidence of the December 13, 2004 visit with my letter confirming the conversation. Exhibit 6.

21. During the conversation, Turner said that if no documents were found, she might have to provide a statement that no responsive documents existed.

22. With regard to the second subpoena, Turner indicated that she was still determining what the company's position would be concerning the second subpoena.

23. Turner asked Mr. Goldsmith about the relevance of the documents requested. Although I did not hear each fact provided, I heard Goldsmith respond to Turner by providing some basic information about the lawsuit, and the relevance of the information sought in the second subpoena.

24. Turner assured Goldsmith and myself that she would get back to us as to her company's position with regard to the second subpoena. She indicated that she would instruct Groce, presumably a subordinate of hers, to proceed to provide the documents she had previously said she would provide.

25. On Tuesday, February 27, 2007, Groce contacted me and informed me that documents were available to me at the Lanham facility. In her message, she did not specify which documents were available for pick up.

26. I never received a subsequent call from Mary Turner, nor have I ever received a phone call or any other communication from anyone identifying herself as Nicole Nesbitt or anyone else from Goodell, DeVries, Leech, & Dann.

I have read the above statement, and I swear or affirm that it is true and complete to the best of my knowledge and belief.

_____          _____March 22, 2007_____
Adam W. Marker                                                    Dated