IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

DAVID B. STEVENS )
 )
    Plaintiff, )
 )
    v. )  Civil Action No. 1:05CV01924-RCL
 )
NATIONAL RAILROAD PASSENGER )
CORPORATION, )
 )
    Defendant. )

---

## DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S MOTION FOR SUMMARY JUDGMENT REGARDING THE CLAIMS FILED BY PLAINTIFF MAE WHITLEY

Mae Whitley brought this case against her former employer, National Railroad Passenger Corporation ("Amtrak") because she was not selected for promotion to a Foreman II position. Amtrak did not promote Whitley because she was not qualified. She was not eligible to apply for the vacancies at issue in this case and had no relevant experience with the mechanical crafts, a critical requirement for the Foreman II job.

Whitley seeks to evade the defects in her application by alleging a complicated conspiracy, claiming that the supervisors who sought to help her obtain a promotion were retaliating in some way against her. The undisputed material facts, however, clearly demonstrate that there was no conspiracy and no improper conduct. Instead, Amtrak acted for legitimate, non-discriminatory reasons. The Company justifiably chose the best qualified candidate for each Foreman II vacancy. Whitley was never the top candidate because of her lack of mechanical experience.

For these reasons, as set forth fully below, the Court should grant Amtrak's motion. There are no material facts in genuine dispute and, as a matter of law, Amtrak is entitled to summary judgment.

## SUMMARY OF FACTS

Mae Whitley was hired by National Railroad Passenger Corporation in 1977. Statement of Material Facts Not in Dispute ("Statement'") at ¶1. She worked as a car cleaner until 1985 when she was promoted to Foreman I, a position responsible for supervising car cleaners. Statement at ¶¶ 1-3.

Whitley continued working for Amtrak as a Foreman I until June 2, 2005 when she became disabled. Statement at ¶ 31. She did not return to work after this injury. Statement at ¶ 32. Since November 2005, she has been on long-term disability and, as a result was taken off Amtrak's payroll. Statement at ¶33.

1.    Prior Lawsuit

In 2003, Whitley filed suit against Amtrak alleging sexual harassment and gender discrimination ("2003 suit"). Statement at ¶ 4. By order dated June 9, 2004, this Court granted summary judgment in favor of Amtrak and dismissed Whitley's claims with prejudice. Statement at ¶5.

Whitley filed a notice of appeal, which was dismissed for lack of prosecution by Order dated December 2004. Statement at ¶¶ 6-7.

2.    The Foreman II Title

Whitley repeatedly sought promotion to a Foreman II position. Statement at ¶ 8. This supervisory position differs significantly from the Foreman I title she held. Foreman

- 2 -

II supervise Amtrak's craft employees, specifically, the carman, mechanics, electricians, and pipefitter titles.  Statement at ¶ 9.

To hold a Foreman II position, an employee must have direct experience working in the mechanical crafts.  Statement at ¶ 10.  Amtrak also prefers to hire employees who hold appropriate certifications.  Statement at ¶ 12.  In certain circumstances, the Company will hire external candidates, with strong mechanical experience who do not have the required certifications.  The Company requires all new employees to complete a ninety day probationary period, which provides sufficient time to obtain the required certifications.  If a new hire fails to obtain these certifications before the conclusion of the probationary period, his/her employment would be terminated.  Statement at ¶¶ 13-14.

3.    Applications for Promotion

Whitley applied for a series of vacancies for Foreman II positions starting in January 2004.  Statement at ¶ 15; Plaintiff Whitley's Responses to Interrogatories No. 11.[1]  The Company responded to her interest in the position by encouraging her to attend classes and obtain her certifications.  Statement at ¶¶ 16-18.  According to her deposition testimony, she obtained her certification on March 17, 2004.  Statement at ¶¶ 20-21.

Whitley received two interviews in the Forman II selection process.[2]  Statement at ¶ 22.  Whitley's interview performance was consistently evaluated as poor, particularly

---

[1]    Whitley's interrogatory responses identify only seven Foreman II positions for which she applied.  Plaintiff Whitley's Responses to Interrogatories No. 11.  For purposes of this Motion, however, Amtrak will treat Whitley as if she had applied for all vacancies during the relevant time period.

[2]    Amtrak decided to interview the incumbents in the Foreman I title for Foreman II positions, despite the fact that they were not qualified for the Foreman II job.  Amtrak recognized that there were no promotion opportunities from Foremen I title and decided to give the Foremen I a chance for promotions although they did not meet the requirements for promotion to the Foreman II job.  Ray Dep. at 229-30; *see* Ray Dep. at 118-19.

on the mechanical questions asked in the interview. Statement at ¶ 24; Declaration of

Robert Frank ("Frank Decl.") at ¶¶ 12-13; Declaration of Levar Freeman ("Freeman

Decl.") at ¶¶ 4-5. Mr. Freeman identified other problems with Ms. Whitley's interview

performance, such as her inability to identify examples of her ability to make work-

related decisions. Freeman Decl. at ¶ 7.

Because of her poor interview performance and her lack of direct experience with

the mechanical crafts, Whitley was not selected for any of the vacancies. Statement at

¶¶ 20-22. In contrast, the successful candidates all had substantial mechanical experience

and were demonstrably better qualified than Whitley. Statement at ¶¶ 25-26.

    4.    Whitley's Discipline

In April 2004, Mr. Campbell learned that the Foreman I in the mechanical

department has not properly maintained the department's shampoo machines. Statement

at ¶ 27. These machines, particularly the wands, were in disrepair, but no one had

reported this problem. Campbell Dep. at 58. As a result, none of the shampoo wands

were in working order and none could be used to clean Amtrak's cars. Campbell was

frustrated by this failure to maintain equipment, and disciplined all of the Foremen I,

including Whitley. Whitley decided not to challenge this discipline through the

grievance process. Instead, she executed a waiver and accepted a written reprimand,

dated April 6, 2004. In receiving this discipline, Whitley was treated in the same manner

as all other Foreman I. Statement at ¶¶ 27-29.

Under Amtrak policy, employees who receive discipline are not eligible to apply

for promotion for a period of one year. Statement at ¶30. Consistent with this policy,

Whitley was barred from applying for promotions from April 6, 2004 until April 5, 2005.

None of the successful candidates had received discipline within a year of their promotion. Statement at ¶ 30.

    5.    <u>This Lawsuit</u>

In September 2005, plaintiff David Stevens filed his second amended complaint and Whitley was added as a party to this lawsuit. Whitley states two counts, alleging that she was denied a promotion to the Foreman II position because of gender discrimination and retaliation in response to the 2003 suit. Second Amended Complaint.

ARGUMENT

Summary judgment is not a "disfavored procedural shortcut" but can be an appropriate way to resolve litigation and avoid the time and expense of trial. *Williams v. Verizon Washington DC, Inc.*, 266 F. Supp.2d 107, 115 (D.D.C 2003) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file and affidavits establish that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Williams v. Verizon Washington DC, Inc.*, 266 F. Supp.2d at 115.

In considering a motion for summary judgment, the court must credit the evidence submitted by the nonmoving party and draw all justifiable inferences in its favor. *Reeves v. Sanderson Plumbing Prods,* 530 U.S. 133, 150 (2000); *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). Nonetheless, a moving party is entitled to judgment if "a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Dickerson v. Sectek, Inc.*, 238 F. Supp.2d 66, 72

(D.D.C. 2002) (*citing Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir.

2002 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

　　　The nonmoving party's opposition must consist of more than mere unsupported

allegations or denials, and must be supported by affidavits or other competent evidence.

Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; see *Anderson v. Liberty Lobby*, 477 U.S.

242, 252 (1986) ("mere existence of a scintilla of evidence in support of the plaintiff's

potion will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff"); *Dickerson v. Sectek, Inc.*, 238 F. Supp.2d at 72-73 (nonmoving

party must submit competent evidence "setting forth specific facts showing that there is a

genuine issue for trial").

> "Although a court should draw all inferences from the supporting records
> submitted by the nonmoving party, the mere existence of a factual dispute,
> by itself, is not sufficient to bar summary judgment. To be material, the
> factual assertion must be capable of affecting the substantive outcome of
> the litigation; to be genuine, the issue must be supported by sufficient
> admissible evidence that a reasonable trier-of-fact could find for the non
> moving party"

*Washington v. Thurgood Marshall Academy,* 2006 U.S. Dist. LEXIS 40318, * 18 (D.D.C.

2006) (citations omitted). Under Rule 56(c), if the nonmoving party has failed to make a

sufficient showing on an essential element of his case on which he bears the burden of

proof, summary judgment is warranted. *Fox v. Ciaccia,* 424 F. Supp.2d 1, 5 (D.D.C.

2006) (*quoting Celotex,* 477 U.S. at 323).

　　　Ms. Whitley states two counts in the complaint. She asserts that she was

subjected to discrimination on the basis of her gender (Count III) and that she was

subjected to unlawful retaliation. Her claims are stated only under the D.C. Human

Rights Act.  Both counts fail as a matter of law and Amtrak is entitled to summary

judgment dismissing all of Whitley's claims.

I.    AMTRAK IS ENTITLED TO SUMMARY JUDGMENT
      ON WHITLEY'S CLAIMS OF GENDER DISCRIMINATION

To prevail in a discrimination or retaliation claim, a plaintiff should follow the

three-part burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802-05 (1973); *Richard v. Bell Atlantic Corp.,* 167 F. Supp.2d 34, 38 (D.D.C.

2001).

> Under this framework, the plaintiff must first establish a prima facie case
> of discrimination by showing that (1) she was a member of the protected
> class; (2) she applied for and was qualified for an available position; (3)
> despite her qualifications, she was rejected; and (4) either someone filled
> the position or it remained vacant and the employer continued to seek
> applicants.

*Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006) (*citing Latham v. Snow,* 336 F.3d

1085, 1088 (D.C. Cir. 2003)).[3]

If the plaintiff establishes a prima facie case, the burden then shifts to employer to

produce evidence that the defendant was rejected for legitimate, non-discriminatory

reasons.  433 F.3d. at 896 (*citing Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133,

142, (2000).  Once the defendants satisfies this burden of production,

> the *McDonnell Douglas* framework – with its presumptions and burdens –
> disappears and the sole remaining issue is discrimination *vel non.*  At this
> point, "to survive summary judgment, the plaintiff must show that a
> reasonable jury could conclude from all of the evidence that the adverse
> employment decision was made for a discriminatory reason."

---

[3]    The same analysis governs claims stated under the D.C. Human Rights Act  *See
Lynch v. West Publishing Corp.,* 2004 U.S. Dist. LEXIS 27551, * 10 n.6 (D.D.C. 2004)
("proof of discrimination is established under the D.C. Human Rights Act in much the
same way as it is established under the [*McDonnell Douglas*] tripartite framework").

*Holcomb,* 433 F.3d at 896-97 (*quoting Latham,* 336 F.3d at 1088) (internal citations omitted).

Plaintiff's discrimination claim fails both because she cannot establish a prima facie case and because the undisputed material facts establish that Amtrak had legitimate, non-discriminatory reasons for choosing not to selected Whitley for the Foreman II vacancies. For each of these reasons, Amtrak is entitled to summary judgment on count III of the Complaint.

A.    Whitley Cannot Establish a Prima Facie Case of Gender Discrimination

Whitley's discrimination claims fail because she cannot establish a prima facie case. There are eleven Foreman II vacancies at issue and Whitley was not a qualified candidate for any of these positions.

1.    Whitley was not eligible to apply for any Foreman II vacancy

a.    Whitley is not eligible for any
vacancy prior to March 17, 2004

Whitley concedes that she was not qualified for a Foreman II job prior to March 17, 2004. She contends that she became qualified only after she obtained the certifications required for the Foreman II position. Whitley Dep. at 88 ("Only thing I was really concerned about was being certified so I would be able to work the job"). The date when she obtained these certifications, according to her testimony, was March 17, 2004. Whitley Dep. at 89; Statement at ¶ 21.

By her own admission therefore, Whitley was not qualified for any vacancy that was filled prior to that date. For this reason, Whitley cannot complain that she was not awarded one of the earliest four vacancies, which were filled in January 2004. These

vacancies were filled at a time when Whitley admits she was not qualified for a Foreman II promotion.

The same reasoning precludes Whitley's claims for the fifth vacancy, which was filled on March 19, 2004, two days after Whitley contends she obtained her certifications. Under her theory of the case, she did not complete her certifications in time to be considered for this vacancy. According to Whitley's own reasoning, therefore, she was not eligible for consideration for this position as well.[4]

> b.    Whitley was not qualified for any vacancy occurring
>        between April 6, 2004 and April 5, 2005

Whitley also was not qualified for any vacancy during the year in which she was barred from consideration for a promotion because she received discipline. The undisputed facts establish that Whitley, like all Foreman I incumbents, received discipline for failing to maintain a shampoo machine. Whitley executed a waiver, agreeing to receipt of a written warning and waiving her right to a hearing. Statement at ¶ 29.

Under long-standing Amtrak policy, Whitley was precluded from applying for a promotion for one year following this discipline. Statement at ¶ 30. Thus, she was not eligible for consideration for any vacancy occurring between April 6, 2004 and April 5, 2005. Because the six remaining vacancies at issue occurred between May 25, 2004 and January 19, 2005, Whitley was not a qualified candidate for any Foreman II position.

---

[4]    Moreover, this position was filled by another woman, Jane Ladson, who was substantially better qualified than Whitley. Statement at ¶ 25. Whitley cannot complain about the selection of Ms. Ladson and cannot state a prima facie case of gender discrimination regarding this position.

This policy was applied consistently. No foreman candidate was selected if he/she had discipline within a year. Statement at ¶ 30.

Whitley has sought to overcome this prohibition, both on the grounds that the discipline was "unfair," and that vague promises were made to her that this discipline would not count or would somehow be kept secret. Campbell Dep. at 150. Whitley has no corroboration for these claims, and relies solely on her recollection, which has been contradicted by every other witness asked about this incident. Whitley's unsupported recollections are insufficient as a matter of law to enable her to avoid summary judgment. *Thurgood Marshall Academy*, 2006 U.S. Dist. LEXIS 40318 at *18-19 (D.D.C. 2006).

Moreover, her disputes regarding this discipline are not relevant. The material facts regarding this discipline are undisputed. Whitley was treated in the same manner as all Foreman I, who received a formal written reprimand for failing to attend to their duties properly. Whitley was not targeted for special treatment, but was held to the same requirements as all employees in her workgroup. Statement at ¶ 28.

Amtrak's policy precluding employees who have received discipline from applying for promotions is well-established. Statement at ¶ 30. This policy was not created to frustrate Whitley's goals or imposed arbitrarily to block her applications.[5] Whitley has no evidence whatsoever that she was subjected to disparate treatment.

---

[5]    Admittedly, Whitley was interviewed during the period of her disqualification. Amtrak's H.R. Department allowed these interviews because it was unaware of the discipline. Upon learning of Whitley's disqualification, Whitley was notified in writing that she would not be selected for positions because of the discipline  *See* Plaintiff's Deposition Exhibit 20.

Whitley was not eligible to apply for any of the eleven vacancies for Foreman II. She cannot establish a prima facie case and Amtrak is entitled to summary judgment on Whitley's gender discrimination claims.

2.      Whitley did not have the background and
        <u>experience required for a Foreman II position</u>

If Whitley had been eligible to apply for any of the vacant positions, Amtrak still would not have selected her. Whitley did not have the basic qualifications for a Foreman II position.

The Foreman II position description specifically requires experience working with the mechanical craft jobs. Exhibit A to Declaration of Sarah Ray; *see* Statement at ¶ 10. Whitley could not satisfy this requirement. Statement at ¶ 11. In her deposition, she admitted that she never held the title of carman, pipe fitter, or electrician. She also admitted that she never performed the duties of a carman or an electrician. She claimed that she had performed one small part of the pipe fitters' job, which involved filling the toilet tank. She acknowledged, however, that she has no direct experience with any of the other, mechanical skills required by this title. Whitley Dep. at 69-74. She was not a qualified candidate for this position and cannot satisfy the requirements to state a prima facie case of gender discrimination.

B.      Whitley Cannot Rebut Amtrak's Explanation For
        <u>Selecting Other Candidates For The Foreman II Vacancies</u>

Even if Whitley could manage to state a prima facie case, her gender discrimination claim could not survive summary judgment. Amtrak has put forth a legitimate, business-related, non-discriminatory reason for selecting other candidates.

- 11 -

The Company hired candidates with substantial mechanical experience, who were demonstrably better qualified than Whitley.

      1.     <u>Whitley Was Not As Qualified As the Successful Candidates</u>

There was no discrimination on the basis of gender or on any other unlawful basis. Instead, Amtrak selected the best qualified candidates. The undisputed facts establish that two of the selected candidates were female.

Whitley cannot compare her qualifications to those of the successful candidates. Amtrak has consistently maintained that for a Foreman II position, a person needed experience working with the mechanical crafts. All of the successful candidates had significant mechanical experience. *See e.g.,* Statement at ¶ 25 – Leslie White (nine years as a mechanic with Norfolk Southern Railroad; three and a half year experience as a carman inspecting wheels and air brake systems for Amtrak); *id.* – Rodney Wilson (ten years experience with the U.S. Navy working with generators, pumps, compressed air; experience as Assistant Chief Engineer and Director of Maintenance); *id.* – Jane Ladson (carman inspecting and repairing wheels and air brake systems); *id.* – Glenn Shifflet (six years as an electrician with Amtrak; prior experience as a service technician for Washington Gas Company).

In contrast, Whitley has no relevant mechanical experience and no background in any of the positions she sought to supervise. Statement at ¶ 11; Whitley Dep. at 69-74. Amtrak justifiably selected candidates whose experience more closely matched the needs of the position. Because the Foreman II position supervised the mechanical crafts, the Company legitimately chose applicants with years of direct experience with the mechanical crafts. Whitley had no such experience.

2.     There is no evidence of gender discrimination

Whitley has failed even to allege a reason why the three interviewers, Assistant Superintendent Robert Frank, Union General Chairman Joe Tana, and Human Resources Representative Levar Freeman, would discriminate against her on the basis of her gender. Mr. Frank was singled out in the decision dismissing Whitley's 2003 suit for responding promptly and effectively to Whitley's sexual harassment allegations. Exhibit 1C to Whitley Dep. at 16 (Frank was so concerned he took immediate measure to remove plaintiff from problems). Mr. Tana was a representative of her Union, was present to ensure that the interview was fair and unbiased, and had no problem with either the process or the decision. Statement at ¶ 23; Tana Dep. at 97-99, 141-42.[6]

The undisputed facts show that the Company did not discriminate on the basis of gender. The Foreman II positions went to the best qualified candidate, including women. Two of the vacancies were filled by women, Leslie White and Jane Ladson.

3.     Whitley Asks the Court to Redo Amtrak's Personnel Decisions

Given these facts, the Court should give no weight to plaintiff's claims. Whitley can produce no evidence that Amtrak's decision was pretextual or resulted from improper motives. In such circumstances, it is well-settled that courts should not act as super-personnel agencies.

> Even if a court suspects that a job applicant "was victimized by [] poor selection procedures," it may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. 1982). Once the employer has articulated a non-discriminatory explanation for its action, as did the District here, the issue is not "the correctness or desirability of [the]

---

[6]     Whitley contended in her deposition that she was also interviewed by Sarah Ray, Al Aronson, and Paul Higgs. Whitley Dep. at 99. However, there is no evidence that any of these individuals engaged in gender discrimination or any other inappropriate conduct.

> reasons offered . . . [but] whether the employer honestly believes in the
> reasons it offers. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d
> 368, 373 (7th Cir. 1992). *See also Pignato v. American Trans Air, Inc.* 14
> F.3d 342, 349 (7th Cir. 1994) ("It is not enough for the plaintiff to show
> that a reason given for a job action is not just, or fair, or sensible. He must
> how that the reason given is a phony reason.").

*Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C. Cir. 1996); *see*

*Foreman v. Small,* 271 F.3d 285, 291 (D.C. Cir. 2001) ("consistent with the courts'

reluctance to become involved in micromanagement of everyday employment decisions,

the question before the court is limited to whether [the plaintiff] produced sufficient

evidence of . . . discrimination, not whether he was treated fairly"), *cert. denied,* 536

U.S. 958 (2002); *Richard v. Bell Atlantic Corp.,* 167 F. Supp.2d 34, 40 (D.C. 2001) ("the

D.C. Circuit has recognized that courts 'may not "second-guess" an employer's personnel

decisions absent demonstrably discriminatory motive'") (citations omitted)

  Given these undisputed facts, Amtrak is entitled to summary judgment on Count

III of the Complaint. Whitley has no evidence from which a jury could conclude that

Amtrak engaged in unlawful gender discrimination.

  Instead, it is beyond dispute that (1) Whitley was not eligible for any of the

vacancies; (2) Whitley was not qualified for the Foreman II position, and (3) Amtrak

chose the candidates who were better qualified than Whitley for each vacancy and, thus,

had a legitimate, non-discriminatory reason for its decision not to promote Whitley.

Count III should be dismissed with prejudice.

II. AMTRAK IS ENTITLED TO SUMMARY
  JUDGMENT ON WHITLEY'S RETALIATION CLAIMS

  For the same reasons, Amtrak is also entitled to summary judgment dismissing

Whitley's Count II retaliation claims. Whitley cannot state a prima facie case of

retaliation and Amtrak's decision to select other candidates was justified by legitimate, non-discriminatory reasons.

    A.    <u>Whitley Cannot Establish a Prima Facie Case of Retaliation</u>

To establish a prima facie case of retaliation, Whitley must show (1) that she engaged in protected activity; (2) that she suffered an adverse action; and (3) that there is a causal connection between the two. *Jones v. Washington Metro. Area Transit Authority,* 205 F.3d 428, 433 (D.C. Cir. 2000); *Lynch v. West Publishing Corp.,* 2004 U.S. Dist. LEXIS 27551, * 13-14 (D.C. 2004) (*citing Paquin v. Fannie Mae,* 119 F.3d 23, 31 (D.C. Cir. 1997)).

Whitley cannot establish the final prong in this test. There is no causal connection between her earlier lawsuit and Amtrak's decision to hire other, better qualified candidates for the position.

The undisputed evidence establishes that the supervisors she blames for the retaliation Michael Kapela, Master Mechanic, and Bernard Campbell, Assistant Superintendent, did not impede her applications.

There is no evidence that Mr. Kapela was involved in the hiring decisions at issue. Transcript of the Deposition of Michael Kapela ("Kapela Dep.") at 22; Transcript of the Deposition of Ronald M. Truitt ("Truitt Dep.") at 23; Transcript of the Deposition of Joseph Tana ("Tana Dep.") at 110, 113. As Mr. Kapela explained, "My standard saying is this: If you pick them, you have to live with them. I don't get into that level." Kapela Dep. at 24; *see* Tana Dep. at 28, 30.

Similarly, Mr. Campbell had no role in the selection of Foreman II candidates. Campbell Dep. at 12, 21, 24. He did, however, support Whitley's application and believe

that she deserved the opportunity. Campbell Dep. at 15-16, 76; Tana Dep. at 49.

Campbell expressed this opinion to others and actively supported her efforts to obtain a

promotion.

> Q    Did Ms. Whitley ever ask you personally to take any actions
> to help her get promoted to Foreman II?
>
> A    Yes.
>
> Q    What did she ask you to do?
>
> A    Let her take 238 courses.
>
> Q    Did you do that?
>
> A    Yes.

*       *       *

> Q    Is there anything else that you recall doing to assist her
> prospects in getting promoted to Foreman II?
>
> A    Just paying for her 238 training.

Campbell Dep. at 77; *see* Tana Dep. at 49, 84, 95 ("Mr. Campbell went out of his way to

help Mae).

Finally, the undisputed testimony establishes that the decision not to promote

Whitley was made by other employees, Robert Frank, Assistant Superintendent, and

Levar Freeman, H.R. Representative. Whitley has no evidence whatsoever to tie any of

these individuals to her prior suit or to any bias regarding her applications. In fact, there

is no evidence that Mr. Frank or Mr. Freeman even knew of her prior lawsuit.

Whitley cannot establish any causal connection between the decision to hire

qualified candidates instead of her, and her earlier lawsuit. In the absence of such a

connection, she cannot state a prima facie case of retaliation. Summary judgment is therefore appropriate.

> A.    Whitley Cannot Dispute Amtrak's Reasons
>        For Selecting Other Better Qualified Candidates

Whitley's retaliation claims fail for a second reason. She cannot establish that Amtrak chose other candidates for a retaliatory or other improper reason. Whitley bears the ultimate burden of proving that Amtrak was motivated by retaliation. *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1288-89 (D.C. Cir. 1998) (*citing Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 259-60 (1981)). She cannot meet this burden and, in fact, has no evidence to rebut Amtrak's non-discriminatory explanation for its decisions. *See Broderick v. Donaldson,* 437 F.3d 1226, 1234 n.3 (D.C. Cir. 2006) (retaliation claim fails when employer puts forward a legitimate, non-discriminatory reason for the adverse action and plaintiff "fails to present sufficient evidence on which a reasonable jury could decided that the proffered justification was mere pretext"); *Brown v. Brody,* 199 F.3d 446, 458 (D.C. Cir. 1999) (affirming summary judgment in employer's favor where plaintiff failed to show that the employer's explanations were a pretext for discrimination and retaliation); *Bush v. Engleman,* 266 F. Supp. 2d 97, 103 (D.D.C.2003) ("plaintiff's retaliation claims cannot survive summary judgment where defendant presents specific evidence of a legitimate, non-retaliatory reason for its action and plaintiff is unable to demonstrate that the reason is a pretext").

As established above, Whitley was not eligible to apply for a Foreman II vacancy. She was ineligible for the first five positions because she had not satisfied any of the requirements for the job. Specifically, she did not have any mechanical experience or any of the required certifications. She was ineligible for the remaining vacancies because

she had received discipline and, according to Amtrak's well-established policy, could not apply for promotions for a year thereafter.

Whitley was ineligible to apply for any of the eleven vacancies for a second reason. She did not satisfy the prerequisites for the job. Statement at ¶ 10. Specifically, Amtrak limited consideration for the position to persons with significant experience working with the mechanical crafts. Whitley had no such experience.

Finally, the undisputed facts establish that Amtrak hired better qualified applicants than Whitley. She cannot challenge this legitimate, non-discriminatory explanation.

The successful candidates all had significant experience working with mechanical crafts. Statement at ¶ 25. Whitley had no such experience. Statement at ¶¶ 11, 26.

Further, the certifications that Whitley relies so heavily upon were not as significant as the mechanical experience. New hires could obtain the necessary certification during their 91-day probationary period. Statement at ¶¶ 13-14. In contrast, employees could not obtain a significant experience working with the mechanical crafts in this same three-month period. Statement at ¶ 10.

Finally, the record establishes that Amtrak offered Whitley two interviews, in an opportunity to allow her to show that she could satisfactorily perform the job. Statement at ¶ 22; *see* Statement at 23 (Whitley's interviews were fair and consistent with other candidate's interviews). The undisputed facts establish that Whitley's performance during the interview did not persuade the hiring managers that she had sufficient mechanical experience to perform the Foreman II job safely and effectively. Statement at ¶25. For this reason, she was not offered a Foreman II position. Instead, the vacancies

were filled by applicants who had the required experience and expertise. Statement at ¶¶ 26-27.

Whitley cannot rebut the non-discriminatory reasons Amtrak has advanced for its decision not to offer her a Foreman II vacancy. Her claims should not be allowed to proceed to trial and, for this reason as well, summary judgment is appropriate.

III.     WHITLEY'S MISCONDUCT CLAIMS SHOULD BE DISREGARDED

For the first time in her deposition, Whitley alleged that she was subjected to improper conduct. These claims are contrary to the allegations in her complaint, which clearly allege only that she was improperly denied a promotion to a Foreman II job. Complaint at ¶¶ 54-61. In addition, these claims were never identified in Whitley's discovery responses.[7]

It is too late for Whitley to amend her complaint. She cannot raise these new claims at this time, and the Court should disregard any effort to do so.

Further, these claims involve the same allegations contained in Whitley's 2003 suit. These claims were considered and rejected. The doctrine of res judicata precludes the re-litigation of these claims. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").

Finally, these claims are time-barred. Whitley's last day at Amtrak was June 2, 2005. She did not raise these claims within a year. D.C. Stat. § 2-1403.16. She is therefore precluded from raising them now.

---

[7]     Significantly, during Whitley's deposition Amtrak repeatedly requested that she supplement her discovery responses if she intended to pursue this new claim. Whitley Dep. at 143, 144, 145. Despite this discussion, plaintiff has failed to supplement or to take any steps to amend her complaint.

IV.    WHITLEY IS PRECLUDED FROM RECOVERY
       BY HER OWN MISCONDUCT

Finally, Amtrak is entitled to summary judgment because Whitley knowingly

engaged in misconduct for which she would have been terminated.  Whitley admits that

(1) she improperly tape recorded co-workers; (2) that this conduct violated Amtrak

policy; (3) that she would have been terminated for this misconduct; and (4) that she

avoided termination only by taking disability leave, from which she has not yet returned.

Statement at ¶¶ 34-37.

This admitted misconduct ends Amtrak's liability in this case as of the June 2005,

when the misconduct was discovered.  *McKennon v. Nashville Banner Publ. Co.*, 513

U.S. 352 (1995).  Even if Whitley could recover on any of her claims, her damages would

cut off as of this date, when Amtrak justifiably would have terminated her employment.

For this reason as well, the Court should grant summary judgment limiting Whitley's

ability to recover.

## CONCLUSION

Whitley was not eligible to apply for any of the Foreman II vacancies about which

she complains.  In addition, she was not qualified for promotion to a Foreman II position

because she lacked direct experience working with the mechanical crafts.

Whitley also cannot complain about any of the candidates selected for the

Foreman II vacancies.  Each successful candidate was demonstrably better qualified than

she.  Whitley cannot dispute the legitimate, non-discriminatory reasons advanced by

Amtrak for choosing these better-qualified candidates.

For these reasons, the Court should grant Amtrak's motion for summary

judgment.  Whitley's claims should be dismissed with prejudice.

Dated: April 5, 2007

Respectfully submitted,

KRUCHKO & FRIES

By:_____/s/_____
    John G. Kruchko

_____/s/_____
Keith Fischler
D.C. Bar No. 377601

Counsel for Defendant
National Railroad Passenger
Corporation

OF COUNSEL:

KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554