IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID B. STEVENS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONAL RAILROAD PASSENGER )<br>CORPORATION, )<br>)<br>)<br>Defendant. )<br>) | Civil Action No. 1:05CV01924-RCL |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON STEVENS' CLAIMS**

1.  Plaintiff David Stevens began his employment for Amtrak around February 28, 1990, as a coach cleaner at Amtrak's Ivy Center Station. Second Amended Complaint, ¶ 8; Declaration of David Stevens ¶ 1.[1]

2.  Prior to his employment at Amtrak, sometime during 1988, Stevens was diagnosed as being HIV-positive. Stevens Decl., ¶ 1.

3.  In 2003, Stevens failed a drug test when he tested positive for cocaine. Transcript of the Deposition of David Stevens ("Stevens Dep.") at 80-82; *see* Exhibits 11 and 14 to Stevens Dep. He entered a drug rehabilitation program and took a leave of absence from work. Stevens Decl., ¶ 2. Stevens returned to work around February 26, 2004, and was assigned to the Union Station facility. Stevens Decl., ¶ 3.

---

[1] David Stevens' Declaration was previously submitted to this Court as part of Plaintiff's response to Defendant's Motion to Dismiss. A copy of the declaration without the exhibits is attached in the Appendix to this Motion.

4.      Stevens claims that upon his return an Amtrak co-worker, Shirley Snyder, inappropriately divulged to other Amtrak employees that Stevens had AIDS. Second Amended Complaint, ¶ 11.

5.      In March 2004, Stevens filed an internal complaint with Amtrak's Dispute Resolution Office, claiming his co-workers were subjecting him to a hostile work environment based on his HIV status. Stevens Decl., ¶ 6. Following the complaint, Stevens alleges his supervisors began giving him less desirable and more difficult work assignments. *Id.*

6.      Around April 9, 2004, Stevens consulted his mental health professional, Eric LeHot, who advised Stevens to take a medical leave of absence. Second Amended Complaint, ¶ 20. Stevens agreed and was on medical leave for the next five months. Stevens Decl., ¶ 31. During that span, in late June 2004, Stevens filed a charge of discrimination with the Equal Employment Opportunity Commission, which later issued a finding of no probable cause. Second Amended Complaint, ¶ 27.

7.      In September 2004, Stevens sought to return to his job at Amtrak. Stevens Decl., ¶ 31. As required by company policy, Amtrak instructed Stevens that he would have to undergo a return-to-work physical and a drug screen. Declaration of Bernard Campbell (Campbell Decl.") ¶ 4; Deposition of Demetria Hudley ("Hudley Dep.") at 36, lines 13-22. Stevens again became ill after making the request, which forced a delay in his return. Stevens Decl., ¶ 85.

8.      In mid December 2004, Stevens again prepared to return to work and went to Concentra Medical Center for his exam. Stevens Decl., ¶ 90. As part of that exam, Stevens provided a urine sample for the drug test. Stevens Decl., ¶ 91. Stevens provided a sample that was outside the temperature range for normal human urine specimens. Stevens Decl., ¶ 92;

2

Hudley Dep. at 60, lines 8-22; Plaintiffs' Deposition Exhibit 81. More specifically, Stevens' specimen was "cold." Hudley Dep. at 60, lines 12-22.; *see* Exhibit 20 to Stevens Dep.

9. Stevens was required to give a second urine specimen before leaving the premises. Hudley Dep. at 63-64, Plaintiffs' Deposition Exhibit 42. Stevens could not immediately give another specimen, so the Concentra staff sent him to complete the rest of his physical first. Hudley Dep. at 64, lines 12-22. During this process, his temperature was determined to be 97.8 degrees. Exhibit 16 to Stevens Dep.

10. However, Stevens left the Concentra facility without giving a second urine specimen. Hudley Dep. at 42-43. Once Stevens left the facility without giving a second specimen, his specimen was disqualified. Hudley Dep. at 43, lines 7-15; *see* Exhibit 16 to Stevens Dep.

11. Under Amtrak's written policy, if an employee leaves a testing facility before completing his drug test, the employee is considered to have refused the drug test. Such a refusal is, by itself, sufficient grounds for termination from employment. Declaration of Bernard Campbell ("Campbell Decl.") ¶ 7 and attached Amtrak Drug and Alcohol Policy, ¶¶ 4.2.1.7, 4.2.2; Transcript of the Deposition of Bernard Campbell ("Campbell Dep.") at 207-208.

12. Furthermore, Stevens had signed a Rule G waiver regarding drug use; his refusal to complete the drug test was a violation of that waiver and required that his employment be terminated under Amtrak policy. Campbell Dep. at 222-223; Exhibit 14 to Stevens Dep.

13. Nonetheless, in February 2005, Amtrak conducted an investigative hearing at which Stevens and his union representative were present, concluded Stevens had left the testing facility without completing his drug test in violation of Amtrak policy and Stevens' Rule G

3

waiver, and terminated Stevens' employment. Campbell Dep.at 234; Plaintiffs' Deposition Exhibit 62.

14. In December 2005, Stevens filed his Second Amended Complaint in this matter in which he alleges that Amtrak retaliated against him by terminating his employment after Stevens complained to his supervisors about treatment he believed to be harassment and then filed a corresponding charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Second Amended Complaint, ¶¶ 50-52.

Dated: April 6, 2007

Respectfully submitted,

KRUCHKO & FRIES

By:_____/s/_____
John G. Kruchko

_____/s/_____
Keith Fischler
D.C. Bar No. 377601

Counsel for Defendant
National Railroad Passenger Corporation

OF COUNSEL:

KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554

4