MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
MAE L. WHITLEY,                :
              Plaintiff,       :
     -vs-                      : C.A. NO. 03-00636 (RCL)
NATIONAL RAILROAD PASSENGER    :
CORPORATION,                   :
              Defendant.       :
- - - - - - - - - - - - - - - x

Deposition of:

MICHAEL KAPELA

Washington, District of Columbia
Tuesday, November 18, 2003

A witness, called for examination by counsel for the plaintiff, pursuant to notice, at 1400 K Street, Suite 1000, Washington DC, beginning at 10:15 a.m., before JOSEPH A. INABNET, a Court Reporter and Notary Public in and for the Commonwealth of Virginia at Large, when were present on behalf of the respective parties:


DEPOSITION EXHIBIT 77 2-12-07

ORIGINAL

SLR REPORTING
(301) 340-0042

MICHAEL KAPELA
NOVEMBER 18, 2003

---

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

1   ON BEHALF OF THE PLAINTIFF:
2
3       GARY T. BROWN, ESQ.
4       KAREN MARCUS, ESQ.
5       Gary T. Brown & Associates
6       1400 K Street, NW, Suite 1000
7       Washington, DC 20005
8       (202) 393-4900
9       gtbfirm@garytbrown.com
10  ON BEHALF OF THE DEFENDANT:
11
12      KEITH FISCHLER, ESQ.
13      Young, Goldman & Van Beek
14      510 King Street, Suite 416
15      Alexandria, Virginia 22314
16      (703) 684-3260
17      kfischler@yggvb.com
              C O N T E N T S
18  WITNESS:                          MICHAEL KAPELA
19  EXAMINATION BY MR. BROWN              4
20             E X H I B I T S
21  NUMBER:              MARKED FOR IDENTIFICATION:
22     (None)

SLR REPORTING
(301) 340-0042

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 2

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 45

1    Q.  Oh, I understand that.
2        But you are saying you would have to lose
3    your job, and I'm saying you would only have to
4    lose your job if they knew.
5        MR. FISCHLER:  I object.  This is just
6    arguing.
7        MR. BROWN:  No.  I'm just asking --
8        MR. FISCHLER:  Well, what is the question
9    that's pending?
10   BY MR. BROWN:
11   Q.  Your use of the words "you would have to
12   do something" is in your own mind?
13       MR. FISCHLER:  He has testified that is
14   his understanding.
15       MR. BROWN:  You can still answer.
16       MR. FISCHLER:  You can answer if you can,
17   if you understand the question.
18       THE WITNESS:  If your question is if
19   Ms. Whitley came to me as an officer of Amtrak --
20   BY MR. BROWN:
21   Q.  Uh-huh.
22   A.  -- and said, Frank Cover is touching me

SLR REPORTING
(301) 340-0042

---

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 53

1    to talk about it because of her fear that, I guess,
2    whoever she would implicate would take reprisals on
3    her.
4    Q.  How about -- can you recall anyone else
5    who has come to you with complaints about some form
6    of sex harassment?
7    A.  No.
8    Q.  And if I heard you correctly -- let me
9    ask you again.
10       You said you hadn't heard anyone make any
11   accusations about Frank Cover inappropriately
12   talking or touching them?
13   A.  No.
14   Q.  How about any EEOC complaints?
15       Have you been involved in any EEOC
16   complaints?
17   A.  Yes, sir.
18   Q.  Have they involved sex harassment, sex
19   discrimination?
20   A.  It involved -- there was a Diversity
21   complaint, EEOC, that Ms. Whitley brought.
22       Ms. Terry Brown from the Diversity

SLR REPORTING
(301) 340-0042

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 54

1 Department called me, said that Ms. Whitley said
2 that I was harassing her.
3     Q.  Said that you were harassing her?
4     A.  Yes, sir.
5         MR. FISCHLER:  Let me -- is he answering
6 your question?
7         Are you asking him about the Equal
8 Employment Opportunity Commission?
9     A.  Okay.
10        Are you asking him about internal or
11 external?
12        MR. BROWN:  Well, I think he is answering
13 my question.
14        MR. FISCHLER:  Okay.  Well, that's fine.
15 BY MR. BROWN:
16    Q.  And so Ms. Brown said that Ms. Whitley
17 said that you had been harassing her?
18    A.  Yes, sir.
19    Q.  And what kind of harassment did Ms. Brown
20 tell you?
21    A.  Harassment.  She just used the word
22 harassment.
        That she called and asked me, that when

---

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 63

1     A.  Ms. Whitley was the only Foreman 1
2 applicant for the temporary Foreman 1 FDA position.
3         So there was an interview that took place
4 with Ms. Sarah Ray, manager of HR, myself, a
5 Ms. Carol Evans, who was then the manager of
6 training at Ivy City, and Frank Cover, her union
7 representative.
8     Q.  Okay.
9     A.  That interview took place -- and I can
10 tell you the date because I just handed him the
11 interview papers from the other day -- on the
12 9th -- 9/30/99.
13        That's when that interview took place.
14        And at that time, Ms. Whitley did poorly
15 in that interview.  For being a Foreman 1, which
16 she has had that position for a while, the
17 questions that were asked, she struggled with
18 answering the questions.
19    Q.  Okay.  But you picked her because she was
20 the only applicant?
21    A.  No, sir.  No, sir, not at all.
22        We picked her -- I sat down with the

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 73

1  A.  She went to -- I can't even tell you who
2  or when there was some discussion, I guess, between
3  the foremen's union and the Company, about giving
4  the Foreman 1s a career path.
5       So she went into the Foreman 2 training.
6  Q.  And that training was to help Foreman 1
7  have a career path to Foreman 2?
8  A.  That's correct.
9  Q.  Foreman 1 out of the car cleaner or the
10 car department?
11 A.  The Foreman 1 position was after the FDA
12 Dissent Decree was in place with the Company.  Then
13 the Foreman 1 position was devised to give the
14 coach cleaners someone to specifically supervise
15 the coach cleaners.
16 Q.  Okay.  So in the locomotive area, that
17 position didn't exist, the Foreman 1?
18 A.  No.
19 Q.  And the first level supervisory job for
20 people in that area was the Foreman 2?
21 A.  In the locomotive department.
22 Q.  In the locomotive department.

---

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 74

1  A.  Yes.
2  Q.  Okay.  So this training was developed to
3  help Foreman 1's develop enough technical knowledge
4  to become Foreman 2.  Is that right?
5  A.  Yes.
6  Q.  Now, how was it that people were
7  selected -- how were people selected to get that
8  training?
9  A.  The Foreman 2 training?
10 Q.  Yes.  The training to become Foreman 2.
11 A.  I don't know that.
12 Q.  Were you involved in selecting any of the
13 people who did receive that training?
14 A.  No.
15 Q.  Who would have done that?  Do you know?
16 A.  I believe Mr. Cover, naturally, because
17 he was a union official.
18      But I really don't know how that whole
19 process -- I don't know how the process was agreed
20 upon, and I don't know who the applicants were for
21 the positions.
22 Q.  But at some point, you were informed that

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 75

1  Ms. Stigger was going to take that training?
2  A.  Yeah. Absolutely.
3  Q.  And you said Mr. Covers was on the panel
4  interviewing Ms. Whitley for the Foreman 1 FDA
5  position?
6  A.  Yes, sir.
7  Q.  And do you recall what he said about her
8  after the interview was over when you were talking
9  with the candidate?
10  A.  Specifically?
11  Q.  Well, in general.
12      Was he complimentary? Was he thinking --
13  A.  No. In general he was -- I'm sorry for
14  cutting you off.
15  Q.  Yes. No. Please, it's -- that's ...
16  A.  In general, we, the panel, all agreed in
17  unison that we give Ms. Whitley the opportunity.
18  Q.  I understand. But do you recall what
19  Mr. Cover said about Ms. Whitley?
20  A.  Nothing specific.
21  Q.  Do you recall if he said anything
22  positive or negative about her?

MAE L. WHITLEY
vs. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 79

1  that that's what I was doing, supervising her
2  closely.
3  BY MR. BROWN:
4  Q.  So Darryl Pesh never talked to you about
5  it, about Ms. Whitley, how you were treating her?
6  A.  No.
7  Q.  Mike Bello, so you know him?
8  A.  Mike Bello worked for me. He was a
9  locomotive manager.
10  Q.  Okay. Did he ever talk to you about how
11  you treated Ms. Whitley?
12  A.  No.
13  Q.  How about Carol Evans? Did she ever talk
14  to you about how you treated Ms. Whitley?
15  A.  No.
16  Q.  Do you recall Mr. Cover talking to you
17  about -- during the interview or about the FDA
18  interview regarding the questions you were asking
19  and whether or not they were relevant?
20  A.  No.
21  Q.  You said you know Ms. Stigger.
22      Did you ever socialize with her outside

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 80

1  of work?
2  A.  No.
3  Q.  Do you recall a time you went into the
4  office and asked Mr. Winbish for some directions to
5  a particular address?
6  A.  No.
7  Q.  And that address was for Ms. Stiggers'
8  house?
9  A.  No.
10 Q.  So you -- have you ever been to
11 Ms. Stiggers' house?
12 A.  No.
13 Q.  Okay.  Do you recall a time that
14 Diversity was involved in an incident where you
15 were yelling at people in the midnight train?
16 A.  I was not -- I was -- I didn't know
17 Diversity was involved.
18 I was asked to go to a third trick safety
19 meeting and explain to them why I was asking them
20 questions, not that I was yelling at them.
21 Q.  Okay.  And you went to third trick and
22 explained it at that safety meeting?

SLR REPORTING
(301) 340-0042

---

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 81

1  A.  Yes, sir.
2  Q.  To the best of your recollection,
3  Diversity didn't talk to you about it before or
4  after?
5  A.  No.  I believe Mr. Pesh told me I had to
6  go there.
7  Q.  Okay.  Had Mr. Pesh talked to you about
8  any other complaints that were being made about you
9  regarding your behavior toward employees?
10 A.  No.
11 Q.  Do you know Albert McClain?
12 A.  Yes.
13 Q.  And who was he?
14 A.  Foreman 3 at the facility, does HVAC
15 training.
16 Q.  So he is a trainer?
17 A.  Yes.
18 Q.  He worked with Carol Evans?
19 A.  They interfaced.  Like I don't believe he
20 reported to her because he was at the facility
21 before Ms. Evans was the manager of training.
22 Q.  Now, was there a time that you thought

SLR REPORTING
(301) 340-0042

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 83

1   His overtime and how much overtime he was
2   working was not an issue you were involved with at
3   all?
4        A.   There was an issue, not with overtime.
5   There was an issue of working other
6   shifts.  There was an issue.
7        Q.   He didn't want to do training on a third
8   trick or something like that?
9        A.   No.  It was the wintertime.  A lot of
10  cars were broke, so we were going to utilize him in
11  another supervisory role.  And he couldn't do it
12  for personal reasons.
13            Mr. McClain and I had conversations, and
14  that's why I decided to not make him work those
15  hours because he had serious personal problems.
16       Q.   So you and he were able to resolve that
17  between yourselves?
18       A.   Yes.
19       Q.   And you didn't need to discipline him
20  or --
21       A.   I never disciplined Mr. McClain.
22       Q.   Were you involved in particular training

SLR REPORTING
(301) 340-0042

---

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 84

1   that Ms. Stigger received when she was in that
2   training program to become a Foreman 2?
3        A.   No.
4        Q.   Was some of the training in your shop?
5   Locomotive?
6        A.   I would imagine.
7        Q.   After the training was finished, did you
8   have any input into what Ms. Stigger would do next?
9        A.   That's all seniority.
10       Q.   Well, it's not all seniority.
11  I mean -- so after she finished her
12  training, that was seniority getting a Foreman 2
13  position?
14       A.   If she successfully finished the
15  training, then she became a Foreman 2, which would
16  make her at the bottom of the Foreman 2 roster.
17  So wherever she could hold a job from
18  there, that's what she got.
19       Q.   Okay.  How about if she -- if there was
20  work needed to be done in the Foreman 1 position,
21  Mae was not always there, or how would that work?
22            Would somebody -- would that go on the

SLR REPORTING
(301) 340-0042

MAE L. WHITLEY
VS. NATIONAL RAILROAD PASSENGER CORPORATION

MICHAEL KAPELA
NOVEMBER 18, 2003

Page 93

1  A.  No.
2  Q.  Thank you.
3      You don't know why Mae Whitley was out on
4  disability?
5  A.  No, sir.
6  Q.  Now, you indicated that you and
7  Ms. Stigger did not have any social relationship
8  outside of work.  Is that right?
9  A.  Correct.
10 Q.  How about a social relationship inside
11 work?
12 A.  Such as?
13 Q.  Such as you and Ms. Stigger had a
14 relationship while you were employees of Amtrak?
15 A.  A professional relationship.
16 Q.  No.  I'm talking about a social
17 relationship.
18 A.  No.
19 Q.  A sexual relationship.
20 A.  No, sir.
21 Q.  How did Ms. Stigger and Ms. Evans get
22 along?

SLR REPORTING
(301) 340-0042