IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| David B. Stevens, et. al )<br><br>Plaintiffs, )<br><br>v. )<br><br>National Railroad Passenger Corporation )<br>("Amtrak"), )<br><br>Defendant. ) | ) Civil Action No. 1:05CV01924-RCL |

### SECOND AFFIDAVIT OF DAVID STEVENS

1. My name is David B. Stevens. I am over eighteen years of age and am the Plaintiff in the above-captioned civil action. I am submitting this Affidavit in connection with Defendant's Motion for Summary Judgment, on May 10, 2007.

2. When BL Campbell threatened to "destroy" me at Ivy Center for initiating a hostile workplace environment claim against him, I could literally feel Campbell's spit, as he got right up next to me and berated me.

3. On July 1, 2004, Campbell sent me a letter stating that my medical documentation was not sufficient and that I would have to provide further documentation to support my leave of absence, or else I would be terminated.

4. I had never received that type of threatening letter-- although I had previously been on medical leave-- prior to protesting discrimination.

5. In December 2004, I was ready to return to work after my extended medical leave and scheduled a "return-to-work" physical. On December 12, I was sick, as my breathing was off and I was running a fever.

6. On December 13, 2004, my friend Darryl Hollis was driving me to Concentra in Prince George's County, to undergo the physical examination, which was to include a drug test.

7. We got lost, so we called Jackie Cobb, an administrative employee in the Mechanical Office whose job was to monitor and coordinate my physical with Concentra.

8. Cobb provided directions, and I reported to Concentra. Before I could go inside, I was greeted by Amtrak Foreman II supervisor Craig Watson. Watson said: "hey David, I got tired of waiting on y'all, it's time for me to go home," implying that he had been waiting at Concentra for Stevens to show up.

9. I put on a hospital gown, entered the special sealed room designed to prevent alteration, urinated and provided the urine sample to the attendant, Demetria Hudley. Hudley told me that the sample was outside the acceptable temperature range.

10. Apparently, the plastic cup contains a temperature strip on it, which Hudley was trained to read, but she said no temperature was registering. Hudley Dep. 25, 65, 81-82. No one else ever attempted to read the temperature from the strip. She did not check the temperature with a different strip.

11. I never suggested to the Concentra staff that I was unable to provide a second sample.

12. After waiting a long time with nothing happening, I went into the hallway and got the attention of another staff member, Ebonie Beaty. Beaty said she would check what was going on and the doctor would be with me shortly. However, no doctor came, and no one came to take a second sample.

13. I informed Concentra that I was HIV positive (Hudley Dep. 86), and had recently had contracted pneumonia.

14. This did not prompt an offer to get the second urine sample collected.

15. I suggested that Beaty call Jackie Cobb, the Mechanical Department administrative employee who executed the Med-1 Form authorizing my visit to Concentra and whose number was sitting invitingly on that form.

16. Beaty agreed to try that, and I sat down in the waiting room while Beaty placed a call and spoke on the phone.

17. Finally, I told Beaty I was going to the emergency room and that I was prepared to come back later that evening; I gave Beaty my cell phone number, and went straight to George Washington Hospital Center.

18. I called Concentra from Darryl Hollis' car, where he was a passenger on the way to the hospital.

19. Beaty called me back after he was already at the hospital.

20. While being driven to George Washington University Hospital in Washington, D.C., I called Beaty several times to see if she had heard back from Amtrak.

21. I eventually spoke with Beaty. She told me she had spoken to Tierney, who said he did not have to return to Concentra.

22. I was never permitted to provide the observed second specimen, and I never saw a doctor.

23. Concentra's medical file on me, produced pursuant to a subpoena in this case, confirms that I was never seen by a doctor and never completed his physical.

24. I was never told that Concentra might have been having trouble finding a male chaperone for me on December 13.

3

25. My review of documents in this case shows that on December 14, Andrea Butler, from the Mechanical office informed Campbell that she had faxed Tierney a series of four documents

26. I never told Campbell that I was HIV positive.

27. I have attached seven exhibits to this Affidavit, which are business documents my counsel received by subpoena of Concentra and in discovery.

I declare, under penalty of perjury, that the foregoing affidavit is true and correct.

Executed on May 10, 2007.

*[signature]*
David Stevens

5/10/07
(date)

SS# 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