NATIONAL RAILROAD PASSENGER CORPORATION
60 Massachusetts Avenue, NE, Washington, DC 20002



July 20, 2004

Ms. Janice B. Campbell
Equal Employment Opportunity Commission
Washington Field Office
1400 L. Street, NW
Suite 200
Washington, DC 20005

    RE:    **David Stevens v Amtrak**
             **Charge No: 100 2004 00629**

Dear Ms. Campbell:

On or about June 23, 2004 Amtrak employee David Stevens ("Complainant") filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Respondent, The National Railroad Passenger Corporation ("Amtrak"), alleging discrimination because of a disability in violation of the American with Disabilities Act ("ADA"). This statement will show that Amtrak has not violated the ADA or any other federal or state law.

### Background Information

Amtrak hired Complainant in February 1990, as Coach Cleaner. At times pertinent to the allegations, Complainant was employed as a Coach Cleaner in the Mechanical Department. In January 2004 Complainant, alleged that Ms. Shirley Snider began to spread rumors about his disability to co-workers that resulted in a hostile working environment. He further alleges that he filed an internal complaint in March 2004. Complainant alleges that shortly after he filed the internal complaint his work assignment change. He alleges that Joseph Savor (Saboury) began to constantly monitor and scrutinize his work. He alleges that his doctor placed him on medical leave because of continual harassment and hostile work environment on April 9, 2004.

Complainant alleges that on April 12, 2004, he hand delivered a copy of his doctor's request for medical leave to Mike Cappello (Kapela) Superintendent and shortly afterward discovered that respondent had faxed and passed around his confidential medical information.

Amtrak hereby responds to each of Complainant's allegations:

EXHIBIT
57
2/9/07 *elw*

Amtrak/Stevens
00113

David Stevens
July 20, 2004
Page 2



**Allegation No. 1: "In January 2004, Shirley Snider [a co-worker] began to spread rumors about my disability [HIV status] to co-workers which resulted in my being subjected to a hostile working environment. In March 2004, I filed an internal complaint regarding the hostile working environment."**

On or about March 24, 2004 Complainant filed an internal charge with the Dispute Resolution Office (DRO) alleging Ms. Snider was spreading rumors about his HIV status. There was no mention of a "hostile work environment" in Mr. Stevens's complaint to the DRO. DRO immediately began an investigation into Complainant's allegations.

Apparently, when Mr. Stevens confronted Ms. Snider about spreading the rumors, she apologized to him. Complainant alleged that he did not tell Ms. Snider about his HIV status and he believed that the rumors about his medical condition had spread from other facilities. Snider claimed that Mr. Stevens told her four years ago that he was HIV+. Ms. Snider feels that Stevens is complaining about her because he trying to set up a legal claim.

Complainant alleged that his co-workers began to treat him differently after Ms. Snider began gossiping about him. He told the DRO that he wanted Ms. Snider to understand the impact of her actions. A senior DRO officer interviewed Ms. Snider on April 20, 2004. Ms. Snider contended that it was Mr. Stevens, not her who told other employees about his HIV status. It was determined that Ms. Snider spoke to at least one person about Complainant's medical condition. Accordingly, DRO advised Ms. Snider that discussing or gossiping about another employee's medical condition or perceived medical conditions could violate Amtrak's Harassment Policy. DRO also advised Mr. Snider that she should not discuss Mr. Stevens' medical condition or his DRO complaint with anyone. Mr. B. L. Campbell, Assistant Superintendent, noted that Mr. Stevens had told other people about his medical condition.

Apparently, Complainant is trying to fabricate a claim against Amtrak. When Complainant spoke with Ms. Atkinson in DRO, he brought a copy a letter that Ms. Snider had given to him apologizing to him for speaking with another employee, Rosemary Walker, about his medical condition. Complainant told Ms. Atkinson that the letter was "all he needed," that he was "tired of working," and that someone was going to "pay for this."

Amtrak/Stevens
00114

David Stevens
July 20, 2004
Page 3



**Allegation No. 2:** "Shortly thereafter [after filing his internal complaint], my work assignments changed, and Joseph Savor began to constantly monitor and scrutinize my work."

Complainant held the job of MARC Coach Cleaner that was abolished on March 22, 2004. There was also another VRE job abolished a short time later. When asked by the DRO investigator if he believed that his medical condition had anything to do with the job abolishment, Mr. Stevens replied that he did not believe that was the reason. Mr. Stevens subsequently bumped into a position at Ivy City.

According to Mr. Campbell, Mr. Stevens only worked three days in the new position and then marked off on April 10, 2004, claiming that he was subjected to a "hostile work environment". Complainant has not been back to work since then.

Mr. Saboury, General Foreman, stated that the three days that Complainant was at work, he got no special consideration. Mr. Saboury had a regular crew with regular assignments and he did not move anyone around because the Complainant bumped in to the group. Mr. Saboury said that Mr. Stevens did not come to him, but he heard rumors that Mr. Stevens was upset because Mr. Saboury did not move assignments around to accommodate his seniority. Complainant alleged that Mr. Saboury constantly monitored and scrutinize his work. Again, Mr. Stevens was only on the job for three days. Since he was new to the assignment, it makes sense that Mr. Saboury would monitor his work for a short period of time.

**Allegation No. 3:** "Subsequently, on April 9, 2004, my doctor place me on medical leave because of the continual harassment and hostile work environment."

There is documentation dated April 9, 2004 from an Eric LeHot (who is not a doctor) from the Center For Contemporary Psychotherapy in Washington DC stating Mr. Stevens is currently under his care. Mr. LeHot recommends Stevens remain out of work "temporarily due to a hostile work environment." LeHot goes on to say his decision was based on a single interview and "overwhelming documentation provided to him by the patient and his employer." Amtrak does not know what documentation Mr. LeHot relied on because Amtrak's medical department has not provided any medical information to him and the department does not know him. Whatever documentation he relied on, it was not provided to him by Amtrak.

Amtrak/Stevens
00115

David Stevens
July 20, 2004
Page 4



Allegation No. 4: "On April 12, 2004, I hand delivered a copy of my doctor's request for medical leave to Mike Cappello (Kapela) Superintendent. Shortly thereafter, I discovered that the Respondent faxed and passed around my confidential medial information to employees who should not have been involved with my request for medical leave."

Ms. Pat Graham (Mechanical Administrator) stated that Mr. Stevens came into her office on a day that Mr. Kapela was not at work and tried to give her a copy of his medical documentation. Ms. Graham refused to take the paperwork and advised him that he should send it to the medical department in Philadelphia PA. Mr. Stevens insisted that he wanted to give a copy of his documentation to Mr. Kapela and to Mr. B.L. Campbell. Ms. Graham permitted Complainant to use the fax machine in her office and he faxed a copy of his documentation to the Philadelphia Medical department. Complainant also put a copy of his documentation in an envelope to give to Mr. Campbell.

When Mr. Campbell received the documentation, faxed it to the DRO because they requested it. The DRO initially believed that the documentation – which contained the words "hostile work environment – was relevant to its on-going internal investigation into Mr. Stevens' claims. When DRO received the documentation and discovered that it was a medical note, it forwarded it to Health Services.

Mr. Kapela said that he has never seen Mr. Stevens' medical documentation. Complainant alleges that Respondents passed around his confidential medical information to employees who should not have been involved. Amtrak did not intentionally pass around Complainant medical information. Complainant has yet to provide Amtrak the names other than the DRO investigator of anyone who Amtrak allegedly intentionally gave this information to.

Our own investigation revealed that the document was sent to Mr. Saboury's office because Mr. Saboury was the General Foreman in charge of Mr. Stevens' shift and was within the chain of command. Mr. Saboury was on vacation at the time. Employee Jeff Thomas was in the office with supervisors' Mr. Kevin Nuse and B. K. White when the letter arrived. Mr. Thomas took the April 9, 2004 document off of the fax machine handed it to Mr. White who put the information in Saboury's office and locked the door. Mr. Thomas, of course, was not authorized to have access to this information.

Amtrak/Stevens
00116

Case 1:05-cv-01924-RCL     Document 51-12     Filed 05/10/2007     Page 5 of 5

David Stevens
July 20, 2004
Page 5



## Summary

This is not a case of discrimination because of a disability. Complainant bumped into the Mechanical Department under Mr. Saboury for a total of three (3) days. Complainant has never delineated what comprised this alleged hostile work environment. As such he has also not given any information on the continual harassment was suppose to be. Mr. Stevens provides absolutely no substantive information on his allegations. There is absolutely no evidence that there was a hostile working environment. Indeed, it is difficult to see how any "hostile environment" could exist after only three days. Significantly, the only example that Mr. Stevens provides is that Mr. Saboury monitored his work. Given that Mr. Stevens was new to his assignment, it is hardly surprising that Mr. Saboury would monitor his work in this first three days on the job.

One unauthorized person did accidentally see the April 9, 2004 documentation that was faxed to Mr. Saboury department. It was purely an accident and should not have happened. However, Amtrak absolutely denies intentionally passing around Mr. Stevens's confidential medical information to any unauthorized employees.
Significantly, Mr. Stevens' initial complaint to DRO – that Ms. Snider was spreading rumor about his HIV status – was handled promptly and effectively by DRO. Ms. Snider admitted to speaking with one other person about Mr. Stevens' health condition. Accordingly, she was counseled not to do so by DRO. Ms. Snider had also sent a letter of apology to Mr. Stevens about her behavior. Instead of being satisfied with her apology, Mr. Stevens told Ms. Atkinson in DRO, that he didn't want to work anymore, that the letter was the only evidence he needed and that someone was going to pay.

Amtrak denies that it has violated Complainant rights under the Americans with Disabilities Act of 1990. Complainant provides no facts with which to support his claim. Based on the above, Complainant's claim should be dismissed in its entirety.

Respectfully Submitted,

Andrew McCallum
*EEO Compliance Manager*

Amtrak/Stevens
00117