# Transcript of the Testimony of **Ebonie D. Beaty**

**Date:** February 28, 2007
**Volume:** 1

**Case:** David B. Stevens, et al., v. National Railroad Passenger
Corporation

Printed On: May 10, 2007



Ace-Federal Reporters, Inc.
Phone: 202-347-3700
Fax: 202-737-3638
Email: info@acefederal.com
Internet: www.acefederal.com

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 50

1    specimen, one of two not within temperature.  Number

2    two to follow observed"?

3         A    Yes.

4         Q    Does that mean that a second specimen was

5    needed from Mr. Stevens on that day?

6         A    Yes.

7         Q    Does this form tell you whether

8    Mr. Stevens -- I'm looking down at the bottom where

9    it says "step 6 completed by medical review

10   officer."  Is there anything on this form that would

11   indicate to that you Mr. Stevens gave an adulterated

12   sample?

13             MR. FISCHLER:  The document speaks for

14   itself.

15             THE WITNESS:  No.

16             BY MR. GOLDSMITH:

17        Q    Is there anything that would indicate that

18   he gave a substituted sample?

19        A    No.

20        Q    Is there anything indicating -- strike

21   that.

22             Does this document, Exhibit 81, have

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 51

1    anything on it that tells you he refused to give a

2    sample?

3            MR. FISCHLER:  Document speaks for itself.

4            THE WITNESS:  No.

5            BY MR. GOLDSMITH:

6    Q    Does it tell you -- strike that.

7            I'm going to show you a document that was

8    previously marked as Exhibit 43 in this case.  Do

9    you have one?

10           MR. FISCHLER:  I have one.

11           MR. GOLDSMITH:  Can I ask a favor?  Does

12   yours have a sticker sign on it?

13           MR. FISCHLER:  Yes.

14           MR. GOLDSMITH:  Could you show her yours?

15   I'll be happy to give you another one.

16           MR. FISCHLER:  It's not stickered.  It's

17   just my writing.

18           MR. GOLDSMITH:  That's fine.

19           BY MR. GOLDSMITH:

20   Q    I'm showing you Exhibit 43.  Do you

21   recognize this form?

22   A    Amtrak chain of custody, yes.

Case 1:05-cv-01924-RCL    Document 52-16    Filed 05/11/2007    Page 4 of 22
Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 62

1          THE WITNESS:  No.

2          BY MR. GOLDSMITH:

3     Q    Does Exhibit 43 indicate to you that he

4    refused to test?

5          MR. FISCHLER:  Just based on Exhibit 43?

6          THE WITNESS:  No, it doesn't say he

7    refused.

8          BY MR. GOLDSMITH:

9     Q    So if Mr. Stevens had told you why he said

10   he had to leave the site at 5:13 p.m., do you think

11   you would have shared that information with

12   Ms. Tierney?

13         MR. FISCHLER:  Calls for speculation.

14         THE WITNESS:  Yes.  I think I said I had a

15   conversation.  I stated in 82 that he told me he had

16   to go to the hospital or something.

17         BY MR. GOLDSMITH:

18    Q    Can you think of any reason why you

19   wouldn't have shared that with Ms. Tierney?

20         MR. FISCHLER:  Calls for speculation.

21         THE WITNESS:  No.

22         BY MR. GOLDSMITH:

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 63

```
 1       Q    Would that be the normal thing to do, to

 2   share that with Ms. Tierney?

 3       A    Possibly.

 4       Q    Can you think of any reason why you

 5   wouldn't share it with Ms. Tierney?

 6       A    No, I don't.

 7       Q    Do you have any recollection of anything

 8   Ms. Tierney said to you on December 13th of '04?

 9       A    No.

10       Q    Was Ms. Tierney someone you've spoken to

11   on other occasions?

12       A    I don't recall, so no.

13       Q    Was her name familiar to you when it came

14   up today?

15       A    No.

16       Q    When you gave your hearing testimony

17   previously that I showed you, was your testimony

18   truthful at the time?

19       A    Yes.

20       Q    You said at the hearing on page 106, that

21   you thought Mr. Stevens's actions amounted to a

22   refusal to test.  Do you remember seeing that when
```

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 70

```
 1      Q    There's a Mr. Allione mentioned here.  Do

 2  you recall talking to him?

 3      A    I'm sorry, Mr. --

 4      Q    Down at the bottom, it was signed by

 5  Mr. Allione.  Do you recall talking to him?

 6      A    No, I don't.

 7      Q    Did you ever talk to somebody named

 8  Mr. Campbell?

 9      A    No, I don't recall talking to a

10  Mr. Campbell.

11      Q    Do you ever recall talking to anybody else

12  from Amtrak about Mr. Stevens?

13      A    No.

14      Q    Do you recall anyone else from Amtrak you

15  ever spoke to about anything?

16      A    No.

17      Q    Other than what may have happened on the

18  13th of December 2004, do you have any recollection

19  of speaking to Mr. Stevens on any other occasion?

20      A    No.

21      Q    Has your memory been refreshed as to

22  anything that might have been said between yourself
```

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 71

1    and Mr. Stevens on the 13th?

2       A    No, not really, no.

3       Q    Would it be fair to say what you know

4    about that would be just what's in your hearing

5    testimony?

6            MR. FISCHLER:  Objection as to form.  You

7    can answer.

8            THE WITNESS:  Pretty much, yes.

9            BY MR. GOLDSMITH:

10      Q    If Ms. Tierney had asked you any questions

11   about the particulars of Mr. Stevens's visit to

12   Concentra on December 13th of 2004, would you have

13   told her the truth about this?

14      A    Yes.

15      Q    Does it appear to you from what you've

16   seen today in these documents and from reviewing

17   your own testimony that Mr. Stevens did something

18   dishonest on December 13th at Concentra?

19           MR. FISCHLER:  Objection as to form.

20           THE WITNESS:  Would it appear to me that

21   he did something dishonest, no, not necessarily.

22           BY MR. GOLDSMITH:

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 72

1      Q    Did you see anything that would suggest to

2    you that Mr. Stevens objected to giving a second

3    sample?

4            MR. FISCHLER:  Asked and answered.

5            THE WITNESS:  No.

6            BY MR. GOLDSMITH:

7      Q    Did you see anything that he objected to

8    giving a supervised sample?

9      A    No.

10     Q    In fact, he signed a form agreeing to

11   immediate retest under direct observation; right?

12     A    You're referring to the collection, the

13   unusual collection form?

14     Q    Yes.

15     A    I didn't see that he signed --

16           MR. FISCHLER:  What number is that?

17           MR. GOLDSMITH:  42.

18           THE WITNESS:  I think that's his

19   signature.  I can't say for sure that he agreed to a

20   second collection.

21           BY MR. GOLDSMITH:

22     Q    In signing that form, he was saying that

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 73

1    he agreed to it; right?

2              MR. FISCHLER:  Now you're arguing with the

3    witness.

4              THE WITNESS:  If that's his signature,

5    yes.

6              BY MR. GOLDSMITH:

7        Q    That's what the form is about?

8        A    Right, exactly.

9        Q    Did Mr. Stevens tell you on December 13th

10   of '04 he had recently gotten out of the hospital?

11             MR. FISCHLER:  She's testified she doesn't

12   remember the incident.

13             BY MR. GOLDSMITH:

14       Q    Based on your review of your prior

15   testimony?

16       A    Based on my review, it did say something

17   about he told me he had to go to the hospital.

18       Q    Mr. Stevens said at the hearing -- strike

19   that.

20             Do you have any reason to deny that you

21   spoke to Mr. Stevens at 6:13 in the evening on

22   December 13th of '04?

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 74

1      A    No.

2           MR. FISCHLER:  At 6:13?

3           THE WITNESS:  6:33 p.m.

4           BY MR. GOLDSMITH:

5      Q    6:13 or 6:33, either way?

6      A    No idea.  I don't have any reason to deny

7  that I spoke to him.

8           MR. FISCHLER:  Where are you looking?

9           THE WITNESS:  Page 105.

10          BY MR. GOLDSMITH:

11     Q    Did you ever tell Mr. Stevens on December

12  14th of '04 how long he had to wait at Concentra for

13  a retest to be administered?

14     A    I don't recall, unless it states it in the

15  conversation, the hearing.

16     Q    If it's not in the hearing conversation,

17  it didn't happen?

18     A    I don't recall.

19     Q    Do you know if Ms. Tierney told you how

20  long Mr. Stevens would have to wait around in order

21  for her not to consider it a refusal to test?

22     A    I don't recall.

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 75

1       Q    Is there any reason why you would have

2   resisted having a conversation about that with

3   Ms. Tierney?

4       A    No.

5       Q    Do you know if you ever played any role on

6   December 13th of '04 in trying to get a male

7   observer to watch Mr. Stevens give a second sample?

8       A    I don't recall, unless it states it in the

9   conversation.

10      Q    You mean in your transcript of your

11  hearing testimony?

12      A    Yes.

13      Q    Would you have any reason to deny that you

14  did not do that?

15           MR. FISCHLER:  Her testimony is she

16  doesn't recall.

17           THE WITNESS:  No.

18           BY MR. GOLDSMITH:

19      Q    Do you have any idea in your mind as to

20  who you might have tried to get to be a male

21  observer that day if you had?

22           MR. FISCHLER:  Calls for speculation, lack

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 76

1   of foundation.

2          THE WITNESS:  One of the doctors or

3   physician's assistant.

4          BY MR. GOLDSMITH:

5     Q    Were there any medical assistants who were

6   men?

7     A    I don't believe so, no.

8     Q    I'm sorry.  Did you tell me how many

9   physician's assistants were employed at Concentra at

10  that time?

11         MR. FISCHLER:  Asked and answered.

12         THE WITNESS:  I may have given you a guess

13  about how many.

14         BY MR. GOLDSMITH:

15    Q    Do you recall what the guess was?

16    A    I think I gave you two physician assistant

17  names, but at the time I don't know how many were on

18  duty.

19    Q    You think there might have been two male

20  physician assistants, but you don't know how many of

21  them would have been on duty that afternoon?

22    A    Right.  It could have been more than two.

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 77

1      Q    Could it have been less?

2      A    Less than two, at that time of day, no.

3      Q    Do you have any reason to deny that

4    Mr. Stevens was actually with you when you called

5    Ms. Tierney the first time about him?

6      A    No.

7      Q    If you had left a message for Ms. Tierney

8    about Mr. Stevens's situation, what do you think you

9    would have said in the message?

10          MR. FISCHLER:  Objection.  Calls for

11   speculation.

12          THE WITNESS:  I don't know, just what

13   would have gone on during the collection process.  I

14   mean, I wasn't the collector of his initial

15   specimen.  I would have given her whatever

16   information she needed.

17          BY MR. GOLDSMITH:

18      Q    Do you have any reason to deny that after

19   you called Ms. Tierney and left a message with

20   Mr. Stevens in your presence, he waited a while more

21   before he left Concentra on December 13th?

22          MR. FISCHLER:  I'm going to object as to

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 78

1    form.

2              THE WITNESS:  Could have been possible,

3    yes.

4              BY MR. GOLDSMITH:

5        Q    It's possible he did wait a while longer.

6    Is that what you mean?

7        A    Yes.

8        Q    If Mr. Stevens was telling you he might

9    have to leave after having been at Concentra for

10   3-1/2 hours, would you have told him that it was

11   Amtrak's job to determine what would happen next or

12   that it was Concentra's job?

13             MR. FISCHLER:  Calls for speculation, lack

14   of foundation.

15             THE WITNESS:  It's normally the employer's

16   decision as to what would happen next if a patient

17   were to leave before giving the second specimen.

18             BY MR. GOLDSMITH:

19       Q    You think that's what you might have told

20   Mr. Stevens if you had a conversation about that?

21             MR. FISCHLER:  Object.

22             THE WITNESS:  Yes.

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 79

```
 1           BY MR. GOLDSMITH:

 2      Q    If you had a phone conversation with

 3   Mr. Stevens around an hour after he left, do you

 4   think you would have conveyed to him information you

 5   had gotten from Amtrak?

 6           MR. FISCHLER:  Same objection.

 7           THE WITNESS:  Information, what type of

 8   information?

 9           BY MR. GOLDSMITH:

10      Q    Do you think you would have conveyed to

11   him what Amtrak told you about what was going to

12   happen next in his retesting process?

13      A    No, that's not the normal process.  You

14   normally tell them they have to speak to their

15   supervisor or whoever the contact person is for that

16   particular employer.

17      Q    Do you think that's what you would have

18   told Mr. Stevens?

19      A    Yes.

20      Q    Is it possible you might have told

21   Mr. Stevens he didn't need to come back to Concentra

22   again that night?
```

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 85

1    Amtrak's policies.

2            BY MR. GOLDSMITH:

3        Q    What would depend on Amtrak's policies?

4        A    Whether or not another -- an additional

5    specimen needed to be collected.

6        Q    Let's take Mr. Stevens out of the

7    equation.  If an employee gives a sample that's out

8    of range and they give a second sample and that's

9    out of range, what does Concentra do at that point?

10       A    We contact the company.  Again, if it's a

11   nonregulated collection, we contact the company.  If

12   it's a regulated specimen, they have to do another

13   one within range.

14       Q    Is that after the first one or after the

15   second one?

16       A    After the second one, they're supposed to

17   give a specimen until one is given that's in range.

18       Q    Do you have any reason to deny that

19   Mr. Stevens would have informed you that he was

20   diagnosed with bronchitis at the hospital?

21           MR. FISCHLER:  Objection to the form of

22   the question.  Calls for speculation, lack of

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 86

1    foundation.

2            THE WITNESS:  Do I have reason to deny,

3    no.

4            BY MR. GOLDSMITH:

5        Q    Are you aware of anything untruthful that

6    Mr. Stevens has said?

7        A    No.

8        Q    Is Ms. Hudley a truthful person, as far as

9    you know?

10       A    As far as I know, yes.

11       Q    How about Ms. Shave?  Is she a truthful

12   person?

13       A    As far as I know.

14       Q    I'm going to show you what's been marked

15   as Exhibit 44.  I've got an extra one of those here.

16   It's already marked as 44.  It's a statement, and it

17   seems to have your signature on it.  Is that your

18   signature down at the bottom?

19       A    Yes.

20       Q    How was this statement prepared?

21       A    How was it prepared?

22       Q    Yes.

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 93

1             MR. FISCHLER:  Calls for speculation.

2             THE WITNESS:  No.

3             BY MR. GOLDSMITH:

4        Q    You can't say, then, in that case it was a

5    mistake by Concentra?

6             MR. FISCHLER:  Calls for speculation;

7    objection to form.

8             THE WITNESS:  I can't say.

9             MR. FISCHLER:  Let me put the objections

10   on because she's trying to do both at the same time.

11            BY MR. GOLDSMITH:

12       Q    Why can't you say?

13       A    I don't know.  I couldn't tell you.  I

14   would only be guessing as to why.

15       Q    Would you deny that he waited because

16   Amtrak wanted him to wait there?

17            MR. FISCHLER:  Objection, lack of

18   foundation.  Objection as to form.

19            THE WITNESS:  No, I couldn't deny it.

20            BY MR. GOLDSMITH:

21       Q    I'm going to have you look at Exhibit 38.

22   Exhibit 38 is a confidential memo that says it's

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 94

1    from Margaret Ann Tierney to Bernard Campbell.  I

2    want to you look at the third paragraph, the very

3    last sentence of this document.  If says

4    "furthermore, the testing technician's statement

5    that the employee provided a cold specimen violates

6    the standards of excellence."  Do you see that?

7         A    Yes.

8         Q    Did you see anything here today suggesting

9    that either Ms. Hudley or yourself informed Amtrak

10   that Mr. Stevens had provided a cold specimen?

11        A    I don't remember giving them that

12   information in that time, cold specimen, no, I

13   don't.  I can't speak for Ms. Hudley.

14        Q    It was your understanding that the sample

15   was found to be out of range by Ms. Hudley; right?

16        A    Yes.

17        Q    But you haven't seen or heard anything

18   that it said that it was cold, have you?

19        A    No.

20        Q    Would you have told Ms. Tierney that it

21   was cold?

22        A    I don't believe so.  I didn't collect the

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 95

1    urine specimen.

2         Q    But if you talked to her about what

3    Ms. Hudley had documented, would you have told her

4    it was cold?

5         A    It was out of range.  I don't think I told

6    her it was cold.

7         Q    Do you have any reason to deny that it's

8    true that Ms. Tierney never asked you if the same

9    gender retest happened immediately after the first

10   sample was out of range?

11             MR. FISCHLER:  Objection as to form; calls

12   for speculation.

13             THE WITNESS:  I don't recall.

14             BY MR. GOLDSMITH:

15        Q    So you can't deny that?

16             MR. FISCHLER:  She's testified she doesn't

17   recall.

18             BY MR. GOLDSMITH:

19        Q    So you can't deny that?

20        A    No.

21        Q    Did you see anything in your prior

22   testimony or any of the documents you saw today that

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 96

1    would indicate to you that Mr. Stevens adulterated

2    his sample?

3        A    No.

4        Q    Are you certain that Mr. Stevens was

5    actually given an opportunity to produce a second

6    sample?

7            MR. FISCHLER:  Asked and answered.

8            THE WITNESS:  As far as I know, he was

9    given an opportunity.

10           BY MR. GOLDSMITH:

11       Q    How do you know that?

12       A    He did a first collection, and he was told

13   he had to give a second one.

14       Q    Was he ever offered the opportunity to go

15   into the room and actually produce the second

16   sample?

17       A    If he was ready to do so.

18       Q    Do you know for a fact that he was?

19       A    No, I don't.

20       Q    Do you know for a fact that he was told he

21   could go into the room and do it?

22       A    No, I don't.

Ebonie D. Beaty - February 28, 2007
David B. Stevens, et al., v. National Railroad Passenger Corporation

Page 97

1      Q    You don't know for sure whether he was

2    actually given an opportunity to give another

3    sample; is that right?

4      A    I just don't know why he wouldn't have

5    been given an opportunity.

6      Q    But you also don't know that he was given

7    the opportunity; right?

8      A    Correct.

9      Q    Do you think Concentra, in the instance of

10   the information regarding Stevens's visit on

11   December 13th, was trying to cover anything up from

12   Amtrak?

13     A    No.

14     Q    Was anything you did or said regarding

15   Mr. Stevens done to cover up Concentra mistakes from

16   Amtrak?

17     A    No.

18     Q    Did you think you had done anything at

19   Concentra that you needed to hide from Amtrak?

20     A    No.

21     Q    Did Ms. Hudley ever tell that you she

22   thought that?