IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID B. STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05CV01924-RCL |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT REGARDING THE CLAIMS FILED BY PLAINTIFF DAVID STEVENS**

Defendant National Railroad Passenger Corporation ("Amtrak"), by counsel, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule LCvR7(d) hereby submits its Reply Brief in Support of its Motion For Summary Judgment Regarding the Claims Filed by Plaintiff David Stevens and, in support thereof, states as follows:

**I.      PROCEDURAL HISTORY**

Plaintiffs Mae Whitley and David Stevens initiated this lawsuit about a year and a half ago, alleging discrimination and retaliation against their former employer, Amtrak. However, plaintiffs' individual claims bear no rational factual relationship to one another and are based on entirely separate circumstances. Therefore, for clarity's sake, Amtrak has filed two separate motions for summary judgment: one addressing Ms. Whitley's claims and the second addressing David Stevens' claims. Plaintiff has filed two separate response briefs regarding each individual plaintiff. The following reply will address Stevens' claims.

## II.   ARGUMENT

Plaintiff David Stevens' response to Amtrak's motion for summary judgment borders on the absurd. Stevens has filed not one, but two different response briefs, each with varying exhibits. To make matters worse, Stevens' responses (including exhibits) total almost five hundred (500) pages. While Stevens has kept his briefs just under the Court's forty-five (45) page limit, he has attached as exhibits every conceivable piece of written evidence. Stevens has clearly rejected the "less is more" approach and opted instead for the "kitchen sink" approach to brief writing. The result is a confusing mish-mash of irrelevant facts, documents, and legal analysis that misses the point entirely of Amtrak's summary judgment motion. Simply put, Stevens' termination was far too remote to his internal or EEOC complaints to support a retaliation claim. And even if Amtrak was, as Stevens' argues, "out to get him," Stevens sunk his own ship by walking out of the Concentric testing facility without giving a second urine sample.

### A.   The Court Should Strike Plaintiff's Summary Judgment Response Brief(s)

As an initial matter, the Court should simply strike Stevens' summary judgment response and award summary judgment to Amtrak. First, Stevens has filed two response briefs with accompanying exhibits. Although each brief is under the Court's forty-five (45) page limit, the voluminous exhibits and lack of identification make the filing virtually unintelligible. In addition, Local Rule LcVR7(c) requires both the moving and responding parties to submit proposed summary judgment orders. Stevens failed to submit one. Stevens also filed both his briefs and accompanying exhibits on May 11, 2007 – a day after the extended May 10th filing deadline that the Court had granted at Stevens' behest.

Perhaps the most egregious procedural error is Stevens' Statement of Genuine Issues – or rather, the lack thereof. Instead of submitting a "*concise* statement of genuine issues," as Local Rule LcVR7(h) (emphasis added) requires, Stevens has submitted forty (40) pages of largely irrelevant facts. Indeed, Stevens appears to have submitted that same document twice, once in electronic document number 51 and the second in electronic document number 52. There is no conceivable definition of "concise" into which Stevens' filing falls.

Stevens clearly hopes to overwhelm the Court with information so that it will simply throw up its hands and decide that at least one genuine issue of material fact must lie amongst the "clutter" and declare that a trial is necessary. The Court should not reward Stevens' tactics but should, instead, strike his brief for not conforming to the Local Rules and grant outright Amtrak's motion for summary judgment.

### B.   Stevens Still Cannot Meet his *Prima Facie* Case of Retaliation

Procedural errors notwithstanding, Stevens cannot prove retaliation. To state a *prima facie* case of retaliation under the D.C. Human Rights Act, Stevens must prove that (1) he engaged in statutorily protected activity, (2) Amtrak took adverse action against him, and (3) there was a causal connection between his protected activity and Amtrak's actions. *Morganstein v. Morgan Stanley DW Inc.*, 2007 U.S. Dist. LEXIS 6781, *16 (D.D.C. 2007).

#### 1.   Stevens Mischaracterizes Campbell's Statements

Stevens first asserts that Amtrak manager Bernard Campbell verbally attacked him and threatened to "destroy" him. Plaintiff's Response Brief, p. 23. Stevens' clear intent is to show that Mr. Campbell's statements were made to threaten Stevens' or to discourage his exercise of his right to complain about discrimination and/or retaliation. Nothing could be further from the truth. In his deposition, Mr. Campbell explained the conversation. Stevens was on leave and

had gone onto Amtrak property without appropriate safety equipment (hard hat, safety glasses, and safety shoes). Mr. Campbell saw Stevens and asked him to leave. Campbell adamantly denied threatening Stevens and specifically denied ever saying that he would "destroy" him. (Deposition of Bernard Campbell, pp. 142 through 146, attached hereto and incorporated herein by reference as **Exhibit "A."**)

In addition, Stevens editorializes Mr. Campbell's alleged discriminatory intent. Campbell testified during his deposition that he simply told Stevens not to put his (Campbell's) name in stuff that he did not have anything to do with. (Campbell Dep., p. 145, lines 15-18.) The conversation was totally innocuous, and Stevens' statements to the contrary belie the record testimony.

Regardless, even assuming Stevens' version of events were true, they do not rise to actionable retaliation. To state a viable claim, Stevens has to show, *inter alia*, that soon thereafter Amtrak perpetrated an adverse action against him. *Morganstein*, 2007 U.S. Dist. LEXIS 6781 at *16. No such adverse action resulted. This conversation occurred when Stevens was on a medical leave of absence (which the company had granted). Stevens' leave continued uninterrupted until his separation, and he earned all the company provided benefits to which he was entitled.

### 2. Stevens Offers Insufficient Evidence of a Causal Connection

Amtrak terminated Stevens' employment in February 2005, following its investigation into Stevens' abrupt departure from the Concentra Medical Center and his failure to complete his return-to-work drug screen. Stevens allegedly complained internally to Amtrak about his co-workers' treatment between May and July 2004. Stevens filed an internal complaint with Amtrak's Dispute Resolution Office in May 2004, took a medical leave of absence in April

4

2004, and filed a charge of discrimination in June 2004. Stevens' termination occurred, at a minimum, seven (7) months (July 2004 to February 2005) after the most recent factual allegation that might be construed as "protected activity." (*See* Amtrak's Statement of Material Facts in Support of its Motion for Summary Judgment on Stevens' Claims, ¶¶ 5-8, 12, & 13.)

In his response brief, Stevens attempts to downplay the seven (7) month span of time between his last alleged protected activity and his termination. According to Stevens, a seven (7) month span is not too remote to establish a causal nexus. Not surprisingly, Stevens uses cases solely from other jurisdictions to support his position. (*See* Pl.'s Response Br., pp. 27-28.) In the District of Columbia, without direct evidence of retaliation Stevens must demonstrate a "very close" temporal proximity in order to raise a causal link. *Maden v. Chow*, 2005 U.S. Dist. LEXIS 3952, *23 (D.D.C. 2005); *Pegues v. Mineta*, 2006 U.S. Dist. LEXIS 59118, *21-22 (D.D.C. 2006). Even a three or four month span has been held too remote to establish a causal link for retaliation purposes. *See Maden*, 2005 U.S. Dist. LEXIS 3952 at 23 (citing *Clark County Sch. Dist. v. Breeden*, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). Stevens' retaliation claim should fail for this reason alone.

Temporal proximity aside, Stevens claim that he was retaliated against for having filed an EEOC charge is not supported by the facts. In order to retaliate, Amtrak would have had to have known about the charge. *See Pegues*, 2006 U.S. Dist. LEXIS 59118 at *21-22. Bernard Campbell (the Amtrak employee responsible for terminating Stevens) testified in his deposition that he did not know that Stevens had filed an EEOC charge until the day of his (Campbell's) deposition. (Campell Dep., pp. 201-202, lines 16-22, attached to Amtrak's opening summary judgment brief) Thus, there is no causal connection between Stevens' termination and his alleged protected activity.

5

3.      Amtrak's Legitimate Non-Discriminatory Reason for Terminating Stevens was not Pretextual

Even assuming that Stevens could somehow salvage his *prima facie* case, he still cannot ultimately prevail. Once a plaintiff makes out a *prima facie* case, the employer then has an opportunity to produce evidence articulating a legitimate nondiscriminatory reason for its action. *Washington v. Thurgood Marshall Academy*, 2006 U.S. Dist. LEXIS 40318 at *42 (D.D.C. 2006). If the employer does so, the plaintiff must then respond with "substantial probative evidence" that the reason given was merely a pretext to hide the employer's true discriminatory motive. *Id*.

Here, Amtrak terminated Stevens' employment for no other reason than the fact that he failed to complete his return-to-work drug test at the Concentra Medical Center. Had Stevens successfully completed the test (and the results found to be negative) he would have returned to work and perhaps been working at Amtrak today. Instead, Stevens voluntarily left the testing facility before giving a second specimen (his first sample was cold). In doing so, Stevens violated longstanding Amtrak policy and his own Rule G waiver regarding drug use. (*See* Campbell Dep. at 222-223, attached to Amtrak's opening summary judgment brief) Company policy requires the termination of all employees who refuse to complete their drug screens. (Defendant's Statement of Material Facts in Support of its Motion for Summary Judgment, ¶¶ 11 & 12) As a result, Amtrak terminated Stevens' employment. The termination had absolutely nothing whatsoever to do with Stevens' medical leave, internal complaints of mistreatment, or his EEOC charge. As noted above, Bernard Campbell was not even aware that Stevens had filed an EEOC charge at the time of Stevens' dismissal.

*i. Stevens' Response Misses the Point*

Stevens attempts to refute Amtrak's argument by highlighting numerous superficial facts in the record that he claims show Amtrak's and Bernard Campell's retaliatory animus toward him. (*See* Pl. Response Br., pp. 35-44) However, to demonstrate pretext, Stevens must prove by a preponderance of the evidence that the legitimate reasons offered by Amtrak were not its true reasons, but were a pretext for discrimination and that its proffered explanation is unworthy of credence. *Johnson v. Holway*, 439 F. Supp. 2d 180, 222 (D.D.C. 2006). Pretext is shown not through evidence that an employer's proffered reasons are inaccurate or incorrect, but through evidence that an employer's proffered reasons are a lie. *Hanna v. Herman*, 121 F. Supp. 2d 113, 118 (D.D.C. 2000). In a nutshell, Stevens' arguments attempt to show that Amtrak did not like him and do little more than fuel his own speculation that Amtrak was "out to get him." Self-serving allegations and speculation is wholly insufficient to raise an inference of retaliation or defeat a proper motion for summary judgment. *Thurgood Marshall Academy*, 2006 U.S. Dist. LEXIS 40318 at *44-45.

*ii. The testing "exception" is a misnomer*

Only one of Stevens' "pretext" arguments is worth directly addressing. Stevens insists that Amtrak and Mr. Campbell ignored the fact that there are exceptions to leaving a testing facility and complains that Amtrak's and Campbell's unwillingness to grant him an exception for having departed Concentra demonstrates pretext. (Pl. Response Br., pp. 40-41; Pl. Statement of Material Disputed Facts, p. 34, ¶¶ 225-226) Stevens' has skewed the facts.

Margaret Tierney, an Amtrak Drug Testing representative, testified in her deposition that to her knowledge the company had previously recognized only two limited exceptions that might excuse an employee's decision to leave a drug testing facility without completing the test: (1)

their house was on fire, and (2) a medical emergency with the employee's child. (Deposition of Margaret Tierney, pp. 57-60, attached hereto and incorporated herein by reference as **Exhibit "B"**) Stevens tries to paint his viral bronchitis as a medical emergency that Amtrak refused to consider because it was "out to get him." That argument is rank speculation. Clearly, viral bronchitis, which is akin to the common cold or flu, is not the type of unique medical emergency that Ms. Tierney described in her deposition. That Stevens wants to analogize his cold to a true emergency involving a child only demonstrates the desperate lengths that he is willing to go to try and paint Amtrak as a bad actor.

Even if Amkrak were "out to get" Stevens (which it was not), the fact remains that Amtrak terminated Stevens because he left the Concentra testing facility without giving a second urine specimen, in direct violation of Amtrak policy and Stevens' Rule G waiver, and not because of any retaliatory or discriminatory animus. (Campbell Decl., ¶ 7 and attached policy ¶¶ 4.2.1.7, 4.2.2, attached to Amtrak's opening summary judgment brief) Stevens has offered absolutely no evidence that demonstrates Amtrak's explanation was a lie.

Amtrak's motive aside, Stevens conveniently overlooks the fact that he chose the day for his test; if he was feeling ill he should have selected a different day. Furthermore, his temperature was normal when taken and his urine sample was cold. Those are not the circumstances from which someone can credibly claim to be ill, much less have an emergency so severe that they were forced to immediately leave the testing facility. Stevens' termination was a product of his own actions.

### III.  CONCLUSION

For the foregoing reasons, defendant National Railroad Passenger Corporation respectfully requests the Court enter summary judgment in its favor on all of David Stevens

claims, dismiss his claims with prejudice, and for all other relief the Court may deem just and proper.

Dated: May 17, 2007

Respectfully submitted,

KRUCHKO & FRIES

By:_____/s/_____
    John G. Kruchko

_____/s/_____
Keith Fischler
D.C. Bar No. 377601

Counsel for Defendant
National Railroad Passenger
Corporation

OF COUNSEL:

KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554