IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID B. STEVENS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:05CV01924-RCL |
| | ) |
| NATIONAL RAILROAD PASSENGER | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTION FOR SUMMARY JUDGMENT
REGARDING THE CLAIMS FILED BY PLAINTIFF MAE WHITLEY**

Confusing quantity for quality, Plaintiff Mae Whitley has barraged the Court with extensive briefings that seek to identify every workplace anomaly she has endured during her years of employment with National Railroad Passenger Corporation ("Amtrak"). These repetitive materials, however, are inadequate to preserve Whitley's claims. None of her arguments raise a material issue of fact that requires trial. Moreover, Whitley cannot meet her burden of proof and establish that Amtrak's denial of her applications for promotion to a Foreman II position resulted from gender discrimination or retaliation.

Although Whitley has scoured the record for every potential criticism she can find of Amtrak's procedures and decisions, she has failed to dispute in any material way the fact that (1) she had no experience working with the mechanical crafts; (2) she was not qualified for any of the Foreman II positions that became vacant prior to the commencement of her long-term disability leave; and (3) Amtrak selected candidates for

each vacancy who were objectively better qualified than Whitley. For these reasons, Whitley's claims have no merit and summary judgment for Amtrak is appropriate.

## ARGUMENT

Rather than identify the factual issues she believes should be tried by a jury, Whitley includes every conceivable issue she can think to raise in her brief, in the hopes that the Court may find one persuasive. This strategy ignores the relevant legal standard. The party opposing summary judgment must show the existence of a genuine issue of material facts. Fed. R. Civ. P. 56. However,

> the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party.

*Washington v. Thurgood Marshall Academy,* 2006 U.S. Dist. LEXIS 40318, * 18 (D.D.C. 2006) (citations omitted).

Despite Whitley's best efforts at obfuscation, her complaint fails for two simple and straight-forward reasons. First, Whitley cannot state a prima facie case because she was not qualified for promotion. She has no mechanical experience. For that reason, she could not satisfy the position's stated prerequisites. In fact, it was not until March 17, 2004, when she obtained some of the relevant certifications for Foreman II title (with the Company's encouragement and financial backing), that she could file a credible application for the position. Shortly thereafter, however, on April 6, 2004, she again became disqualified for promotion because of discipline that she received. Thus, Whitley was not eligible to apply for any of the vacancies that occurred before she left Amtrak's employment on long-term disability.

Second, even if Whitley were considered qualified for the Foreman II position, she was not the best qualified candidate. Amtrak made its selections for legitimate, business-related reasons. Specifically, the successful candidates were objectively better qualified than she. Each successful candidate had substantial direct mechanical experience and Whitley had no such experience.

Whitley cannot contest these facts. Her attempts to identify problems during her employment do not establish pretext. "[P]retext is shown not through evidence that an employer's proffered reasons are inaccurate or incorrect, but though evidence that an employer's proffered reasons are false or a lie." *Hanna v. Herman*, 121 F. Supp.2d 113, 118 (D.D.C. 2000), *aff'd, Hanna v. Chao*, 2001 U.S. App. LEXIS 10902 (D.C. Cir. 2001). Whitley cannot satisfy this requirement.

1.    **Whitley Has No Direct Mechanical Experience**

Plaintiff does not and cannot dispute the fact that she never worked in the mechanical crafts. It is an uncontested fact that she served her entire career at Amtrak as a car cleaner or a supervisor of car cleaners. Defendant's Statement of Material Facts Not in Dispute ("Statement") at ¶¶ 1, 2, 11.

Whitley's deposition testimony confirms this point. Transcript of the Deposition of Mae Whitley ("Whitley Dep.") at 69-74. (A copy of the relevant pages from Mae Whitley's deposition transcript is attached as Exhibit A to this Memorandum.) She acknowledged that she had no relevant experience in any of the mechanical crafts. *Id.* In fact, she could not identify the mechanical crafts without prompting. Whitley Dep. at 69.

Her weak attempts to bolster her credentials do not change these facts. *See* Whitley Dep. at 70 ("I worked closely with the foreman 2s"). For example, Whitley

claimed that she had performed part of the pipe fitters job. The duties she described, pumping and cleaning the toilet tanks, did not involve mechanical tasks. Instead, this function involves cleaning the train cars and is typically performed by coach cleaners. Whitley Dep. at 72.

## 2.    Whitley was not qualified for any Foreman II vacancy prior to March 17, 2004

Whitley had no relevant experience and no claim whatsoever to the Foreman II position prior to taking the classes necessary to obtain some of the required certifications. She admits this fact in her deposition. Whitley Dep. at 69-74; *see* Statement at ¶¶ 10-12.[1]

Whitley argues that she could have been considered for these positions before she obtained her certifications because Amtrak allowed some employees to obtain their certifications during the ninety-day probationary period. This assertion is correct, but irrelevant.

Amtrak allowed new employees to obtain the necessary certifications during the first ninety days at work. Statement at ¶¶ 13-14. Unlike Whitley, however, these new hires were qualified for the job in all respects except for the certifications, which could be completed in the ninety-day period. These employees had substantial mechanical experience. Statement at ¶ 25.

In contrast, Whitley had no mechanical experience. Without the certifications, Whitley's application justifiably would not have been considered because she had none of the required experience, training or classes for the job. It was not until she completed

---

[1]    Whitley only obtained these certifications with the encouragement and support of Mr. Kapela and Mr. Campbell, the very employees she claims unlawfully discriminated and retaliated against her. Statement at ¶ 16. Whitley never explains how these men actively supported her efforts to obtain a promotion at the same time they were allegedly preventing her from obtaining a promotion.

the certification that she could satisfy any of the stated prerequisites for the Foreman II title. Statement at ¶¶ 10-12.

Thus, Whitley could not have applied for any vacancy prior to March 17, 2004. By her own admission, she had no relevant qualifications for any of these vacancies. *See* Whitley Dep. at 88 ("Only thing I was really concerned about was being certified *so I would be able to work the job*") (emphasis added).[2]

**3.     Whitley was not qualified for any vacancy occurring between April 6, 2004 and April 5, 2005**

Whitley also admits that she, along with all other employees classified as foreman I, received discipline in April 2004 for failing to maintain the department's shampoo wands. Statement at ¶¶ 27, 29. Under Amtrak's policy, Whitley was disqualified from applying for a promotion for one year after receiving this discipline. Statement at ¶ 30.

Plaintiff has come forward with no evidence whatsoever to challenge this policy or to assert that the policy was applied in a discriminatory manner. Instead, she raises two arguments contending that the Court should overrule Amtrak's uniform policy. Both arguments seriously mischaracterize the evidence and fail to raise a material issue of fact that should be resolved by a jury.

a.     The discipline remained in effect

Whitley argues that Assistant Superintendent Bernard Campbell promised that he would rescind the discipline or that, for some reason, the discipline would not count. Plaintiff Mae Whitley's Opposition to Defendant's Motion for Summary Judgment

---

[2]     Whitley's claims regarding these vacancies are also time-barred because they were filled more than one year prior to the date on which the Second Amended Complaint was filed and because each vacancy was handled separately. D.C. Stat. § 2-1403.16; *see National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

("Opposition Memorandum") at 9. Unfortunately for Whitley, there is no evidence
supporting this claim. Campbell denies ever making such a statement. Transcript of the
Deposition of Bernard Campbell ("Campbell Dep.") at 47-50. (A copy of the relevant
pages from Bernard Campbell's deposition transcript is attached as Exhibit B to this
Memorandum.) Similarly, Joseph Tana, her union representative, denies knowledge of
this purported conversation. Transcript of the Deposition of Joseph Tana ("Tana Dep.")
at 90-91. (A copy of the relevant pages from Joseph Tana's deposition transcript is
attached as Exhibit C to this Memorandum.)

Whitley ignores the record of this case and advances this theory as if it
were true. In fact, the only citation for this claim is Whitley's recitations of her
conversation with Mr. Campbell, and these recitations fail to raise a genuine
dispute of material fact for two reasons. First, her statement is hearsay and is not
admissible evidence. Fed. R. Civ. P. 56(e) (opposing affidavits "shall set forth
such facts as would be admissible in evidence"); *Bortell v. Eli Lilly and Co.,* 406
F. Supp. 1 (D.D.C. 2005) ("hearsay evidence cannot be considered by the trial
court in ruling on a motion for summary judgment") (*quoting Beyenne v.
Coleman Sec. Servs., Inc.,* 854 F. 2d 1179, 1181 (9th Cir. 1988).

Second, Whitley's own statements, provided without any factual support, are
inadequate to preserve her claims. *See* Fed. R. Civ. P. 56(e); *Washington v. Thurgood
Marshall Academy,* 2006 U.S. Dist. LEXIS 40318, * 44-45 (D.D.C. 2006) ("Plaintiff
must, however, produce evidence "beyond her own speculations, and allegations" to
defeat a motion for summary judgment) (citations omitted). Further, these allegations

ignore the undisputed fact that Campbell encouraged Whitley's interest in obtaining a promotion and financed her training courses. Statement at ¶ 16.

      b.    <u>Whitley was interviewed for the Foreman II position</u>

Second, Whitley argues that she "must have been" considered to be qualified for the Foreman II job, despite the disciplinary disqualification, because Amtrak interviewed her during this period of time. This argument ignores Amtrak's explanation.

Whitley was interviewed by mistake. This mistake was rectified by letter from Taylor Cannon, explaining that Whitley was disqualified from consideration for a promotion for a period of one year. Plaintiff's Deposition Exhibit 20 (a copy of Plaintiff's Deposition Exhibit 20 is attached as Exhibit D to this Memorandum). Plaintiff's attempt to ignore this letter and the explanation it provides simply misconstrues the record.

**4.**    <u>**Whitley was not as well-qualified as the employees selected**</u>

In addition, Whitley wrongly asserts that she was as qualified as the selected candidates. She bases this claim on her history of supervising coach cleaners. Despite her wishful thinking, supervisory experience was not a relevant criterion for selection for the Foreman II job. *See* Statement at ¶¶ 10, 12; *see* Plaintiff's Deposition Exhibit 2 (Job Description – Job Reference #5017267, Amtrak – Washington, DC Foreman II (eff 07/27/04)) (a copy of Plaintiff's Deposition Exhibit 2 is attached as Exhibit E to this Memorandum); Plaintiff's Deposition Exhibit 3 (Job Requisition and Qualification Profile for Foreman II) (a copy of Plaintiff's Deposition Exhibit 3 is attached as Exhibit F to this Memorandum); Plaintiff's Deposition Exhibit 29 (Job Reference #50172367; Amtrak – Washington, DC. Foreman II (eff. 10/24/2003) (a copy of Plaintiff's

Deposition Exhibit 29 is attached as Exhibit G to this Memorandum). These documents provide that the selected candidate will supervise a number of employees, but do not identify supervisory experience as a prerequisite for promotion.

Instead, the position descriptions for the Foreman II title state that applicants must have mechanical experience. Plaintiff's Deposition Exhibit 2 ("must have some mechanical experience"); Plaintiff's Deposition Exhibit 3 ("must have demonstrated mechanical experience") (a copy of Plaintiff's Deposition Exhibit 3 is attached as Exhibit E to this Memorandum); Plaintiff's Deposition Exhibit 29 ("must have some mechanical experience) (a copy of Plaintiff's Deposition Exhibit 29 is attached as Exhibit F to this Memorandum).

The selected candidates all satisfy this requirement. *See* Statement at ¶ 25. (Andrew Horne – electrician with Amtrak; electrician with Guyana Electric Corp. mechanic with General Auto Shop); *id.* (Glenn Shiffel – electrician with Amtrak; service technician with Washington Gas Co.); *id.* (Dean Swain – machinist with Amtrak; experience with diesel engines); *id.* (Derrick Lindsey – maintenance supervisor; aircraft work); *id.* (Jane Ladson – carman for Amtrak experience with wheels and air brakes; substitute Foreman II); *id.* (Harold Burrows – carman mechanic experience with wheels and airbrake systems); *id.* (Leslie White – carman mechanic for Norfolk Southern Railroad; carman for Amtrak); *id.* (Thomas Carter – engine mechanic; carman for Amtrak); *id.* (Michael Aikens – group leader for Amtrak contractor, mechanical technician and quality inspector for DC Metrorail); *id.* (Rodney Wilson – Assistant Chief Engineer, Director of Maintenance, mechanical engineer); *id.* (Robert Grimes – mechanic, assistant supervisor, line maintenance). Because Whitley has no direct

mechanical experience whatsoever, she was objectively less qualified than the successful candidates, even if she were considered to be qualified.  Statement at ¶ 26.

Under such circumstances, the Court should decline Whitley's demand that it act as a super-personnel agency and second-guess Amtrak's hiring decisions.  *Buggs v. Powell*, 293 F. Supp. 2d 135, 144 (D.D.C. 2003) ("[t]he District of Columbia Circuit has stated that "Title VII . . . . does not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions") (*quoting Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999).

**5.     Whitley mischaracterizes Bernard Campbell's testimony**

In her opposition memorandum, Whitley relies extensively on an alleged statement made by Bernard Campbell.  Opposition Memorandum at 11-12, 20. According to Whitley, Campbell stated that unidentified high level people at Amtrak were angered by her earlier lawsuit and would not allow her to obtain a promotion as a result.

Whitley's reliance on this alleged statement is mistaken for several reasons.  First, there is no evidence establishing that the statement was ever made.  She cannot rely on Campbell's deposition to support this allegation.  He did not recall making the statements on which she relies.  Campbell Dep. at 69-71 ("I have no knowledge of this conversation, sir.").  Campbell specifically denied making the statements she alleges he made.

> Q.      Now, at some point in discussing her prospects for being promoted to Foreman II, you said something to her to the effect that you asked her "Do you think those motherfuckers are going to forget?"  Is that right?
>
> A.      I don't know what she's talking about now.  That's not me.
>
> Q.      So no, you didn't say that?

A.    *I absolutely did not say that.*

Q.    And did you ever tell her, in response to her saying that she was being retaliated against, that Amtrak wasn't retaliating against her, they were just not moving her?  Did you ever say that?

A.    *No.*

Campbell Dep. at 69 (emphasis added).

Whitley also seeks to rely on a tape that she claims she made of the alleged conversation with Mr. Campbell.  Again there is no evidence to support her claim that this conversation ever occurred.

Whitley's counsel attempted to use this tape during Campbell's deposition, subject to a standing objection.  Campbell Dep. at 155.  When played, the tape was inaudible and Campbell was unable to identify any statements or answer any questions related to the sound.

Q.    Did you hear your voice on the tape?

A.    I don't know if I heard anything.  It was a lot of mumbo jumbo.

Q.    Did you hear any voices in the tape?

A.    Nothing that was distinguishable.

*        *        *

Q.    Did you hear anything that was said there?

A.    Nothing that I can understand what was said.

*        *        *

Q.    Did you recognize that voice right there?

A.    I don't know – no.

*        *        *

Q.     Do you recognize Ms. Whitley's voice anywhere?

A.     Man, your whole tape is unlistenable.

\*          \*          \*

Q.     Were you able to recognize Ms. Whitley's voice?

A.     The entire tape was unintelligible.

\*          \*          \*

Q.     Did Ms. Whitley say to you, "Bernard, I want to ask you one question?"

A.     I don't know.

Q.     That's because you can't understand what it says on the tape.  Is that right?

A.     I haven't understood anything on the tape yet, sir.

Campbell Dep. at 157-59, 163.  The tape was unintelligible and garbled.  No witness has ever authenticated the tape and no witness could, because it cannot be understood.  It cannot be used as evidence to establish any statement by Mr. Campbell.  For these reasons, Amtrak moves to strike this tape from the record of this case.

Whitley is left only with her affidavit, based on hearsay testimony as to what Mr. Campbell purportedly told her.  Such hearsay statements are not admissible to avoid summary judgment.  Fed. R. Civ. P. 56(e); *Bortell v. Eli Lilly and Co.,* 406 F. Supp. 2d 1 (D.D.C. 2005) ("hearsay evidence cannot be considered by the trial court in ruling on a motion for summary judgment")

(*quoting Beyenne v. Coleman Sec. Servs., Inc.,* 854 F. 2d 1179, 1181 (9th Cir. 1988).[3]

In addition, her unsupported allegation statements fail to provide sufficient competent evidence to allow her to proceed to trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324. These unsupported recollections are nothing more than a "mere scintilla of evidence," which would be inadequate to allow a jury to find in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Washington v. Thurgood Marshall Academy,* 2006 U.S. Dist. LEXIS 40318, * 19 (D.D.C. 2006) ("[t]he adverse party must do more than simply show that there is some metaphysical doubt as to the material facts") (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

Finally, even if this alleged statement were considered, it would fail to establish retaliation. Campbell merely expressed his opinion that others were upset about the fact that Whitley filed a lawsuit. He did not identify who he was allegedly claiming held this opinion, whether this person(s) was in a position to

---

[3]    Whitley's affidavit relies extensively on hearsay. *See* Second (May 10, 2007) Affidavit of Mae Whitley at ¶ 20 ("Myra Simms told me that she had been asked if she would mind training me"); *id.* at ¶ 44 ("I was informed by Tom Wimbush that Stiggers and Kapela were having an affair); *id.* at ¶ 49 ("Louers told me something like: 'BL said: "David Stevens tried to pay off the person who gave him the drug test." Gary then said something like" "because he didn't pass the urine test," or "because his urine was dirty" or "or because his urine wasn't right," I'm not sure which. Gary further stated: "BL said 'I got him now," and that Stevens was going to lose his job. I asked something that Gary responded to by saying that David was already on Rule G."). Such hearsay statements are inadmissible and cannot be used to oppose summary judgment. Fed. R. Civ. P. 56(c). For this reason, Amtrak moves to strike Whitley's affidavit. *See Wasserman v. Roadacker, 2007* U.S. Dist. LEXIS 5961, * 5 (D.D.C. 2007) (exhibits that do not satisfy Rule 56 may be stricken from the record).

exercise any role in the selection of Foreman II candidates or would, in fact, do
so. Even if the Court were to credit this unsupported assertion, it fails to provide
a sufficient grounds on which a jury could rule in Whitley's favor. *Anderson v.
Liberty Lobby,* 477 U.S. 242, 252, (1986); *Washington v. Thurgood Marshall
Academy,* 2006 U.S. Dist. LEXIS 40318, * 18 (D.D.C. 2006). For all of these
reasons, Whitley's reliance on the statement she claims Campbell made cannot
enable her to avoid summary judgment.

6.    **Whitley cannot raise claims resolved in her previous suit**

Whitley's opposition memorandum cites facts previously alleged in her
1993 lawsuit and seeks to reargue the claims she has already raised and lost. For
example, Whitley complains that she was not selected for Amtrak's prior
Foreman II training course, and alleges for the second time, based solely on rumor
and innuendo, that Althea Stiggers received preferential treatment because of an
"affair" with Michael Kapela. Memorandum in Opposition at 3-4; *see also*
Second (May 10, 2007) Affidavit of Mae Whitley at ¶¶ 6, 8-10, 27, 31, 33, 44-46.

These claims have been fully considered and dismissed. *See Whitley v. National
Railroad Passenger Corp.,* Civil Action No. 03-00636 (RCL) (Memorandum Opinion
June 9, 2004). Any attempt to resuscitate these claims would be barred by the doctrines
of collateral estoppel and *res judicata. McLaughlin v. Bradlee,* 803 F.2d 1197, 1201
(collateral estoppel or issue preclusion "requires that "one a court has decided an issue of
fact or law necessary to its judgment, that decision may preclude relitgation of the issue
in a suit on a different cause of action involving a party to the first case.'") (*quoting Allen
v. McCurry*, 449 U.S. 90, 94 (1980)); *Rwanda v. Rwanda Working Group,* 227 F. Supp.

2d. 45, 69 (D.D.C. 2002) ("[r]es judicata bars a claim when there has been a final

judgment on the merits in a prior suit involving the same parties or their privities and the

same cause of action"), aff'd in relevant part, Rwanda v. Johnson, 409 F.3d 368 (D.C.

Cir. 2005) (citing I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 232 U.S. App.

D.C. 418, 723 F.2d 944, 946-47) (D.C. Cir. 1983)).

The issues that Whitley seeks to re-argue have been addressed and rejected

previously.  The Court should not consider these or any other issues that were or could

have been raised in her first lawsuit.

7.     **Whitley would have been terminated for taping her co-workers**

Finally, Amtrak has explained that after Whitley took long-term disability

it discovered that she had committed a serious violation of company policy.

Whitley taped her co-workers without their knowledge.  Statement at ¶ 35.[4]  She

testified that she knew this conduct was improper.  Id.  Justifiably, she would

have been subject to termination if she had remained an active employee.

Statement at ¶ 36.

Whitley now asserts that this application of the company's well-

established policy constitutes retaliation.  Apparently, Whitley mistakenly

believes that because she has previously filed a lawsuit, the Company is precluded

from imposing any adverse action, even in response to an admitted instance of

misconduct.

---

[4]     In making this argument, Amtrak is relying on Whitley's representations
regarding this tape.  As stated previously, the tape itself is unintelligible and Amtrak is
unable to discern its contents.

This argument misapprehends basic legal principles.  An employer can lawfully terminate an employee for legitimate, non-discriminatory reasons.  *Bush v. Engleman,* 266 F. Supp. 2d 97, 103 (D.D.C.2003) ("plaintiff's retaliation claims cannot survive summary judgment where defendant presents specific evidence of a legitimate, non-retaliatory reason for its action and plaintiff is unable to demonstrate that the reason is a pretext").  Certainly, Whitley's admitted violation of Amtrak's longstanding rules falls within that category.  Plaintiff's contrary argument has no merit and should be disregarded.

<u>CONCLUSION</u>

Whitley has failed to raise a genuine issue of material fact.  It is undisputed that she was not eligible for the Foreman II vacancies about which she complains.  Further, the candidates selected by Amtrak were objectively better qualified than Whitley because each presented a substantial history of mechanical experience, which was a basic prerequisite for the Foreman II position.  Whitley has no such experience.

For these reasons, the Court should grant Amtrak's motion for summary judgment.  Whitley's claims should be dismissed with prejudice.

Dated: May 17, 2007                              Respectfully submitted,

                                                 KRUCHKO & FRIES

                                                 By:_____/s/_____
                                                     John G. Kruchko


                                                 _____/s/_____
                                                 Keith Fischler
                                                 D.C. Bar No. 377601


                                                 Counsel for Defendant
                                                 National Railroad Passenger
                                                 Corporation


OF COUNSEL:

KRUCHKO & FRIES
1750 Tysons Blvd., Suite 560
McLean, Virginia 22102
(703) 734-0554